CLARENCE H. HEDDEN, complainant-respondent,

*v.*

THOMAS J. HAND, defendant-appellant.

[Argued March 5th, 1919. Decided June 20th, 1919.]

1. The act of 1918 (*P. L. 1918 p. 739*) is unconstitutional in that its object is not expressed in its title.

2. The act of 1916 (*P. L. 1916 p. 315*) is unconstitutional in that it at-.tempts to give the court of chancery authority to abate certain public nuisances of a character specified in the act, which are criminal offences, thereby, in effect, holding a person for a criminal offence without the presentment or indictment of a grand jury.

3. As the court of chancery never possessed jurisdiction over criminal offences, the act also violates the constitutional provision that the several courts of law and equity shall continue with the like powers and jurisdiction as they had before the adoption of the constitution.

4. The statute is also rendered unconstitutional, because in its operation and effect it deprives the supreme court of one of its inherent prerogative rights to pass upon and to determine in the first instance the questions whether the acts complained of constitute a public nuisance and whether such nuisance shall be abated.

On appeal from an order advised by Vice-Chancellor Lane denying motion to strike out bill of complaint.

*Mr. Henry L. Grosken,* for the appellant.

*Mr. Arthur T. Vanderbilt,* for the respondent.

The opinion of the court was delivered by

KALISCH, J.

The complainant filed his bill of complaint as a resident of the city of Newark, in the county of Essex, in the court of chancery, charging that Thomas J. Hand, on June 22d and 30th, on July 7th and 14th, on August 18th, on September 15th, 1918,

and continuously for some time prior thereto, did keep and maintain a certain building for the purpose of lewdness, assignation and prostitution and habitual sale of intoxicating liquors in violation of law, and wherein other indecent and disorderly acts are permitted and occur. The complainant prayed that an injunction may issue directed to Thomas J. Hand, and to the owner and lessor of the premises and their agents perpetually enjoining them, their agents and lessees from maintaining and permitting such nuisance, and likewise enjoining the removal of any furniture, furnishings, musical instruments or other personal property, except clothing from said building, pending the final hearing of the cause.

A restraining order was issued in pursuance of the prayer, subject to further order of the court.

A motion was made to strike out the bill on the ground that the legislative acts upon which the legal efficacy of the bill depended are unconstitutional.

This motion was denied and hence this appeal. The sole basis of the bill is the act of 1916 (*P. L. 1916 p. 315*) as amended in 1918. *P. L. 1918 p. 739.*

The statute of 1916 s entitled

"An act declaring all buildings and places wherein or upon which acts of lewdness, assignation or prostitution are permitted or occur to be nuisances, and providing for the abatement thereof by the court of chancery."

The statute of 1918 is amendatory of the title of and provisions of the act of 1916, and by section 1, amends the title so as to read:

"An act declaring all buildings and places wherein or upon which acts of lewdness, assignation or prostitution or the habitual sale of intoxicating liquor in violation of law are permitted or occur to be nuisances, and providing for the abatement thereof by the court of chancery."

The evident purpose of this amendment was to add to the category of acts mentioned as nuisances in the title of the act of 1916, the habitual unlawful sale of intoxicating liquor.

The other provisions of the statute of 1916, amended by the later act, are: Section 8, which makes provision that where the disorderly house consists of the habitual unlawful sale of intoxicating liquor, such liquor may be removed and shall be destroyed as soon as may be when no longer required for evidence. Section 9, which excepts intoxicating liquor from the operation of the clause of this section relating to fees to be allowed to the officer for removing and selling movable property, and section 10 which excludes intoxicating liquors from coming within the purview of the section.

On this branch of the case, counsel of appellant, first, contends that the amendatory act is in violation of article 4, section 7, paragraph 4 of the constitution of New Jersey,.in that the object of the act is not expressed in its title.

In support of this contention it is argued in substance, that the title of the original act was made to fit its object as then created, and that the effect sought to be attained by the amendatory act was to enlarge the scope of the original, so that its provisions would become applicable to a new subject-matter not embraced within the language or meaning of its title or body, namely, by adding to its category of acts denounced as nuisances, "the habitual sale of intoxicating liquors in violation of law," of which there is no premonition in the title of either act.

In so far as the title of the act of 1918 is concerned in its relation to the introduction into its body the provision of the habitual sale of intoxicating liquors in violation of law as a new subject-matter to be embraced within the scope and operation of the act of 1916, it is plain that the amendatory statute does not express this object in its title.

Its title is palpably deceptive and misleading. It gives notice that its object is to amend the title and provisions of an act, &c. It is silent in what respect the title is to be amended, and leaves it open to belief that all the provisions of the act of 1916 are to be amended. The original act contains fourteen sections, of which five were amended. The title of the later statute gives no notice that it was to contain a provision in its body which in effect would broaden the act of 1916 so as to extend the jurisdiction of the court of chancery to cases where the nuisance con-

sists of "the habitual sale of intoxicating liquor in violation of law."

In support of the constitutionality of the amendatory act it is strenuously argued, by counsel of respondent, that the legislation impugned does not attempt to engraft on the original statute incongruous matter, since both acts deal with nuisances and provide identical remedies—and that the act and amendment would be valid if it were merely "an act concerning nuisances and the abatement thereof in chancery."

The statement that both acts deal with nuisances and provide identical remedies is not quite accurate. · The amendments, in some respect, provide a different procedure where the nuisance complained of is created by the habitual unlawful sale of intoxicating liquor from that pursued in cases of nuisance provided for in the original act.

. Further, the argument addressed to us ignores the vital circumstances that the title of the statute under discussion limits the invoking of the action of the court of chancery to certain acts which are specifically mentioned and denominated in the title as nuisances, and which according to unquestioned and settled statutory construction by necessary implication excludes all other public nuisances at common law from the operation of the act.

The present statute in its title differs from a situation where such title is general and broad enough to include within its terms congruous matter dealt with by the amendment.

The title by reason of its specific restrictive language, in the present instance, violates a fundamental rule of the constitutional mandate, in that it fails to give notice of the effect of the legislation to one conversant with the existing state of the law. *Sawter* v. *Schoenthal, 83 N. J. Law 501.* The reasoning of Mr. Justice Swayze, speaking for this court, in the case cited, is peculiarly applicable here. At page 503, he says: "If we now look at the essential character of this legislation, it is plain that the legislature's object was to tax transfers of property occurring from the death of the owner or made in contemplation of his death or to take effect at or after his death. The original legislation reached only certain kind of transfers. The amend-

ment of 1906 sought to make this more general and to reach all transfers in such cases. In common parlance all were spoken of as inheritance taxes and if the title of the act of 1894 had read 'An act to tax estates and inheritances,' it would have been broad enough to include the matter of the act of 1906," &c. And so in the case *sub judice,* if the title of the act of 1916 had read, "An act concerning nuisances and the abatement thereof in chancery," it would not only have been broad enough to include the unlawful habitual sale of intoxicating liquor, as well as any other public nuisance, such as gaming houses, resorts for thieves, idlers, disorderly persons, &c., which, though they are congruous, with the subject-matter of the act of 1916—being public nuisances, are nevertheless excluded from the operation of the statute by reason of its specific title. The act of 1918 by reason of its defective title is inoperative and unenforceable.

The elimination of this statute from the case on account of the constitutional defect pointed out removes one of the basic grounds upon which the complainant's bill and the action of the court below rested.

The legality of the proceedings under review must, therefore, derive its sole support from the original act of 1916.

The constitutionality of that statute is also questioned on two principal grounds which may be summed up, as follows—*first,* that the statute contains unconstitutional provisions, and which provisions are so interwoven with other sections of the act, that those which are unconstitutional cannot be exscinded without rendering the entire statute inoperative; *second,* that the legislation, in itself, is unconstitutional, in that it attempts to confer upon the court of chancery jurisdiction of a subject-matter of a purely criminal character.

The interesting questions raised, by counsel of appellant, as to the constitutionality of several provisions of the statute involving fundamental propositions which may affect more or less the validity of the whole act, need not be considered and decided on this appeal, for the reason that there is a prime fundamental question which goes to the validity of the entire statute, and that is, whether the legislature overstepped the bounds of its constitutional limitations in attempting to confer jurisdiction upon

the court of chancery of the subject-matter dealt with by the act. Thus it becomes important to consider first, the purpose and nature of the statute.

The fixed purpose of the statute, evidenced by its title, is to declare that certain buildings or places in or upon which the acts specified in the title are permitted or occur to be nuisances and to be abated in the court of chancery.

The first section of the act substantially follows its title. The specific violations denounced therein are nuisances, indictable and punishable at common law under the Crimes act. The third and fourth sections of the statute confer power and authority on the prosecutor of the pleas or any resident of the county where the nuisance is alleged to exist, to maintain an *action* in the court of chancery to abate and prevent such nuisance, and provide that the *action* shall be brought in the name of the prosecutor, and that it shall be unnecessary to allege or prove special damage. The fifth and sixth sections make the further provision that the *action* shall be commenced by filing a verified bill of complaint and the issue of subpœna; and that all proceedings in such action shall be in accordance with the usual practice in the court of chancery; that the chancellor being satisfied of the sufficiency of the bill shall issue an order to show cause on a certain day why an injunction should not issue against the defendant in accordance with the prayer of the bill, with restraint of the alleged nuisance and the removal of any furniture, furnishings, musical instruments or other personal property, except clothing, from such building or place complained of until further order of the court, and that on the return of the rule if the chancellor is satisfied of the sufficiency of the proofs submitted, he shall issue a temporary injunction, without bond, enjoining and abating the nuisance in accordance with the restraint prayed for. Then, follow provisions for the carrying into effect the final decree of the court of chancery that the nuisance be abated by a forfeiture of the personal property found on the premises, the disuse of the premises for any purpose for one year, unless sooner released by the court of chancery, &c., and a further provision that the violation or disobedience of either any injunction or order provided for by the act shall be

punishable as a contempt of court, by a fine not less than two hundred dollars nor more than one thousand dollars, or by imprisonment in the county jail for not less than one month nor more than six months, or by both fine and imprisonment.

Thus, it follows, as a matter of course, after a temporary injunction has been issued, or an order made in the case, an allegation that the nuisance still continues may, on proof thereof, be heard in a summary manner, and be punished, as a contempt of court, by fine and imprisonment. But the startling feature of the operation of the statute is, that the temporary restraint makes the removal of any personal property (except clothing), no matter how innocuous in character it may be, whether it be the portrait of a family ancestor or a copy of the Holy Scriptures, punishable by fine and imprisonment.

It is difficult from a plain reading of the statute to escape the conclusion that it attempts to add to the equitable powers possessed by the court of chancery, the power to deal with a certain class of criminal cases by the writ of injunction, and the summary process of contempt.

Apparently recognizing an insuperable obstacle in the way of upholding the constitutionality of the statute in view of the provision of article 6, section 1, that "the judicial power shall be vested" in the courts enumerated, amongst which is the court of chancery, "as now exist," and of article 10, section 1, which, among other things, declares:

"The several courts of law and equity, except as herein otherwise provided, shall continue with the like powers and jurisdiction as if this constitution had not been adopted,"

counsel of respondent argues and urges most strenuously that the court of chancery possessed the jurisdiction at common law to enjoin and abate the nuisances specified in the statute. This assertion necessarily raises the inquiry, to what extent has the court of chancery exercised jurisdiction over nuisances prior to the adoption of our constitution?

The jurisdiction of a court of equity to control and afford relief in a case where the nuisance is a public one and indictable, at the suit of a private individual who has suffered an injury

from such nuisance beyond that sustained by the general public cannot be successfully questioned. An examination of the cases, in which the element of a public and indictable nuisance were present, will disclose that the potent factor that induced a court of equity to exercise jurisdiction and to give relief was not for the purpose of suppressing a public nuisance but to redress a private wrong done to the individual, and who sought relief from the court on the allegation that unless the nuisance was enjoined he would suffer irreparable injury.

There is some confusion in the cases as to what Lord Hardwicke decided in *Baines* v. *Baker, Amb. Ch. Rep. 158.* This case is also reported anonymously in *3 Atk. 750,* but not as clearly and fully as in Ambler. On a bill for injunction to stay building an inoculation hospital for people infected with small pox, very near the houses of several tenants of the plaintiff, Lord Hardwicke (at *p. 159*) said: "Bills of this sort are founded on being nuisance at common law. If a public nuisance, it should be in the name of the attorney-general, and then it would be for his consideration, whether he would file such information or not; and that was the case for stopping a way behind the exchange in the city. Lord King recommended it to the attorney-general, to prefer an information in the King's Bench, to try whether it was a nuisance or not." The motion for an injunction was denied. In a much later case, decided in 1799, the *Mayor, &c., and Citizens of London* v. *Bolt, 5 Ves. Ch. 128,* it appears that there were several old houses on Snow Hill, which were to be pulled down to improve the city, and were empty, and that the defendant took them as temporary warehouses for storing sugar, which he had introduced in such quantities, that two of the houses had actually fallen and the others were in the most imminent danger.

An application was made to Lord-Chancellor Loughborough, for an injunction, to prevent the defendant from putting any more sugar in the houses, and in granting the injunction the lord-chancellor (at *p. 128*) said: "But I can only order the injunction upon the petition. I cannot order anything to be done; and it will be necessary to do more; as shoring up the houses, and removing the sugar. I shall make the order upon the

petition; but it seems to me, the lord-mayor can apply a much more effectual remedy. Can there be a doubt, that it is within his office upon presentment of the ward, that these houses are a public nuisance, to order the nuisance to be abated, the houses to be shored up, and the weight removed? * * * The chief magistrate by his general jurisdiction has authority to abate a nuisance in a public street, to shore up the houses under the direction of a surveyor, and make it safe for the public I can interfere only as between landlord and tenant."

These remarks contain an express disavowal of any power residing in a court of equity to abate a nuisance. It is also noticeable that the nuisance dealt with was one affecting the safety of a public highway for travel, and there can be no question that such a nuisance, upon application of the attorney-general, could be properly made the basis of granting preventive relief by injunction.

The case of *Attorney-General* v. *Cleaver, 18 Ves. Ch. 210,* was one where an information was filed by the attorney-general, at the relation of several inhabitants of Battersea and Chelsea, to restrain the defendants from manufacturing soap or black ash, &c. The defendants were under an indictment for maintaining a public nuisance, which had been removed in the King's Bench for trial. Lord Eldon refused the injunction and took occasion to say (at *p. 217*) : "The case cited by Lord Hardwicke, as having occurred before Lord King, was an information here by the attorney-general against a public nuisance by stopping a highway. Analogous to that there have been many cases in the court of exchequer of nuisance to harbours; which are a species of highway; and if the soil belongs to the crown there is one species of remedy for that: the *crown* may abate the obstruction; as it is upon the king's soil. Where it is not upon the king's soil, but merely a public nuisance to all the king' subjects, though the suit may be in the same form, the law is laid down in treatises, particularly by Lord Hale, *De Portibus Maris,* that upon the ground of public nuisance, and not as an obstruction upon the king's soil, it is a question of fact, which must be tried by a jury; and though the suit may be entertained, the court would be bound to try the fact by the

intervention of a jury." In the later case of *Crowder* v. *Tinkler,* *19 Ves. Ch. 617* (decided in 1816), the plaintiff filed a bill to restrain the defendants from completing a building to be used for storing large quantities of gun powder, alleging that the defendants kept on their premises a dangerous quantity of powder, liable to cause explosion and thus endangered their lives and property, and that the plaintiffs intended to proceed against the defendants to abate and remove the new building and that the danger of explosion was so imminent that the court should immediately interfere, Lord Eldon (at *p. 619*) said: "I incline to think that an injunction may be granted in this case, not of nuisance, but of danger to property." And (at *p. 621*) he further said: "Where the subject of complaint is matter of public nuisance the *attorney-general* alone can sue; but it is going too far to say, particularly without more materials than can be had on motion, that if a plain nuisance is attended with particular and special injury to an individual, producing irreparable damage, that individual shall not be at liberty to come here, unless the attorney-general chooses to accompany him."

This case is cited in *Chase* v. *Proprietors of Revere House,* *122 N. E. Rep. 162,* in an opinion of the supreme court of Massachusetts as supporting the statement made by that court (at *p. 164*) that "the jurisdiction of a court of equity over the abatement and suppression of a nuisance, whether public or private, is settled, and may be exercised, although the nuisance is made by statute an indictable offence." A careful reading of *Crowder* v. *Tinkler, supra,* will show clearly that it does not support such a view. The theory on which the preventive relief was granted was the danger imminent to the property of private individuals of being destroyed by an explosion and producing irreparable injury to their private interests. As to the abatement of the public nuisance, it is clear, from a reading of the case, that the lord-chancellor held that such a result would only be properly accomplished by an indictment and a trial in a court of law.

"The greater part of these acts which are indictable as common nuisances cannot from their nature be cognizable in a court of

equity." *2 Waterm. Eden Injunc. (2d ed.) 264.* In a note to the text, gaming-houses, bawdy houses and public nuisances of a like character are mentioned as not coming within the cognizance of a court of equity.

In *Attorney-General* v. *Utica Insurance Co., 2 Johns. Ch. 371,* Chancellor Kent (at *p. 378*) said: "If a charge be of a criminal nature, or an offence against the public and does not touch the enjoyment of property, it ought not be brought within the direct jurisdiction of this court, which was intended to deal only in matters of civil right, resting in equity, or where the remedy at law was not sufficiently adequate." This case is cited with approval in *Attorney-General* v. *Tudor Ice Co., 104 Mass. 239.* At *p. 240,* Mr. Justice Gray said: "This court, sitting in equity, does not administer punishment or enforce forfeitures for transgressions of law; but its jurisdiction is limited to the protection of civil rights, and to cases in which full and adequate relief cannot be had on the common law side of this court or of the other courts of the commonwealth."

No instance can be found in the English reports, nor in the reports of this country, in states where the common law prevailed, and still prevails, where a court of equity has ever taken cognizance of a case of a public nuisance founded purely on moral turpitude.

It is clear that if the legislature may bestow on the court of chancery jurisdiction to grant an injunction and abate a public nuisance of a purely criminal nature, then there can be no valid argument against the power of the legislature to confide the entire criminal code of this state to a court of equity for .enforcement. It is apparent that such a court would render nugatory the provisions of the constitution which guarantee the right of a presentment by a grand jury, and a trial by jury, to one accused of crime.

Before leaving this topic it may serve a useful purpose to refer to the case of *State* v. *Uhrig, 14 Mo. App. 413,* in which the opinion contains a compendium of the grounds on which the jurisdiction of a court of equity was exercised in cases of public nuisance. It divides public nuisances into three classes of cases: "First, to restrain purprestures of public highways or

navigation; second, to restrain threatened nuisances dangerous to the health of the whole community; third, to restrain *ultra vires* acts of corporations injurious to public right; and that the exercise of equity jurisdiction in these three classes of cases is an exception to the rule * * * that a court of equity has no jurisdiction in matters of crime."

Our examination into the state of the common law relating to the jurisdiction of a court of equity of a public nuisance of the character before us prior to the adoption of our constitution, leads us to the conclusion that a court of equity never possessed nor attempted to exercise such jurisdiction in this state. *Attorney-General* v. *Heishon, 18 N. J. Eq. 410.*

Now, as to the constitutionality of the act in attempting to give authority to the court of chancery to abate the specified public nuisance.

The authority to abate a public nuisance resided solely in the courts of criminal jurisdiction at common law.

All common nuisances are regularly punishable by fine and imprisonment; but, as the removal of the nuisance is the chief end of the indictment, the court will adapt the judgment to the nature of the case. Where, therefore, the nuisance is stated in the indictment to be continuing, and does in fact exist at the time of the judgment, the defendant may be commanded by the judgment to remove it at his own cost. *2 Rol. Abr. 84; 1 Hawk. P. C. ch. 75 ¶ 14; Rex* v. *Pappineau, 1 Str. 686; Taggart* v. *Com., 21 Penn. 527; 2 Arch. Cr. Pr. & Pl. 1772 note.*

In *State* v. *Morris and Essex Railroad Co., 23 N. J. Law 360,* Chief-Justice Green (at *p. 370*) said: "The principal object of an indictment for a nuisance is to compel it to be abated; and regularly a part of the judgment upon conviction is, that the nuisance be abated." *1 Chit. Crim. L. 716; King* v. *Stead, 8 D. & E. 142.*

"A similar judgment was rendered in the case of *State* v. *King,* in the Passaic oyer and terminer, which has since been affirmed in the court of errors and appeals."

There is no doubt that the legislature may lawfully confer on the court of chancery the injunction power in a new class of cases to which such remedy is appropriate, or to extend the jurisdic-

tion of the court to a class of cases which by their nature may come properly within the sphere and application of equitable principles, but that is an entirely different situation from the one which confronts us here.

The present case is not one extending the jurisdiction of the court of chancery to a new class of cases which have arisen and call for the application of the equitable powers of that court. What we are met with is a legislative attempt to abstract from and to shear the supreme court of a common law power and prerogative right vested in it by the constitution, and an attempt to transfer to and settle such power on a court of equity. This surely cannot be lawfully done.

The supreme court is not only an appellate court in all cases from the inferior courts of civil and criminal jurisdiction, but is also a court of original jurisdiction in civil and criminal cases. An indictment for public nuisance is cognizable in that court. The indictment may be removed from the oyer and terminer or quarter sessions to the supreme court and the accused tried there, and upon conviction, the judgment may be fine or imprisonment, or both, and that the nuisance be abated. If the indicted party is tried in the oyer and terminer or quarter sessions on an indictment for maintaining a public nuisance and is convicted, he may have his writ of error out of the supreme court and there have the judgment against him reviewed.

It is manifest that the statute in its operation and effect deprives the supreme court of its inherent right to pass on the question whether the facts proven constitute a public nuisance, and, if so, should be abated. For the important fact cannot be ignored that the order to abate a public nuisance is part of a common law judgment, rendered on a conviction upon an indictment for maintaining a public nuisance. As no writ of error can be properly sued out of the supreme court for a review of the decree of the court of chancery, it follows that the supreme court is deprived of one of its inherent prerogative rights. And this result is brought about by bringing the cognizance of a common law crime within the jurisdiction of a court of equity to be dealt with according to the procedure of that court in en-

forcing the penalties of the statute prescribed for the offence. Such an obvious evasion of constitutional authority will not be tolerated. *Entries* v. *State, 47 N. J. Law 140*. In *Flanagan* v. *Plainfield, 44 N. J. Law 118*, Mr. Justice Van Syckel (at *p. 124*), said: "There can be no contraction of the sphere within which the supreme court may dispense its prerogative writs except by extinguishing the tribunals to which they may be sent. A law is equally without authority whether it in express terms or by its operation and effect takes away or diminishes the inherent power of the court." A most comprehensive and lucid exposition of this doctrine is to be found in an opinion by Chief-Justice Beasley, speaking for this court in *Jersey City* v. *Lembeck, 31 N. J. Eq. 255.*

Keeping in view that the maintenance of disorderly houses was a crime at common law and was punishable and abatable in the courts of criminal jurisdiction only, it is clear that the effect of making such a crime punishable and abatable in the court of chancery is to deprive a defendant of his constitutional right to have an indictment preferred against him by a grand jury of the county in which such nuisance is alleged to exist, and a trial by jury. It is idle to entertain the thought for a single moment that the legislature can change the nature of an offence by changing the forum in which it is to be tried. *Palys* v. *Jewett, 32 N. J. Eq.* (at *p. 318*).

Article 1, section 9 of the constitution declares that—

"No person shall be held to answer a criminal offence unless on the presentment or indictment of a grand jury except in cases of impeachment, or in cases cognizable by justices of the peace," &c.

In *State* v. *Anderson, 40 N. J. Law 224*, Chief-Justice Beasley, after stating that the keeping a disorderly house is a crime indictable at common law (at *p. 227*), in commenting on this constitutional provision, pointedly said: "The purpose of this clause was to prevent the bringing of any citizen under the reproach of being arraigned for crime before the public, unless, by a previous examination taken in private, the grand inquest had certified that there existed some solid ground for making the charge."

In conclusion, it may be mentioned that the authority attempted to be conferred by the legislature on the court of chancery to abate a public nuisance of the character specified in the statute can be more effectually exercised by the inherent power possessed by the criminal courts as established in this state.

We think the motion of counsel of appellant made in the court below to strike out the bill of complaint on the ground that the statutes upon which it is founded are unconstitutional should have prevailed. The order denying the motion is reversed, and the court of chancery is directed to decree a dismissal of the bill.

*For affirmance*—WHITE—1.

*For reversal*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, HEPPENHEIMER, TAYLOR, GARDNER—10.