ANDREW BAYER, complainant-respondent,

*v.*

BROTHERHOOD OF PAINTERS, DECORATORS AND PAPER-
HANGERS OF AMERICA, LOCAL 301, et al., defendants-
appellants.

[Argued October term, 1930. Decided May 18th, 1931.]

*Messrs. Josephson & Josephson,* for the appellants.

*Mr. Hervey S. Moore,* for the respondent.

The opinion of the court was delivered by

DONGES, J.

The complainant-respondent is a painting contractor oper-
ating in the vicinity of the city of Trenton. The defendants-
appellants are Brotherhood of Painters, Decorators and
Paperhangers of America, Local 301, its principals, agents,
officers and servants, and Arthur W. McConnell, who is the
business agent of the aforesaid local union.

The difficulty between the parties arises from the alleged
interest of complainant in a concern which uses machines to
apply paint. Complainant denied that he used such machines
in his own business but admitted that he advanced the money
for the purchase of such a machine for a corporation in which
he is a stockholder and that such corporation uses such
machines.

The bill of complaint prays for an injunction restraining defendants and all persons whomsoever associated with them from placing complainant on the unfair list of the defendant union; from proceeding to attempt to collect fines levied upon complainant or his employes; from doing anything whatsoever to keep union men from working for complainant; from injuring the business of complainant in any manner, shape or form; from suggesting, promoting, encouraging or participating in any manner in sympathetic strikes against complainant; from addressing persons willing to be employed by complainant with a view to persuading them or any of them to refrain from working for complainant.

The vice-chancellor found that the union and McConnell, its business agent, had "collectively conspired and by threats and intimidation [of being fined and disciplined by the union] kept others who were willing and desirous of working for complainant, from so doing." He found that the appellants had adopted unlawful means of preventing members of the union from working for the respondent. He further found that it was not against the by-laws or rules of the union for an employer to own stock in a paint-spraying machine, and that the only justification was a paragraph in the minutes of the regular meeting of defendant local, under date of August 13th, 1928, that "a lengthy discussion was held on the spraying machine * * * Local Union 301 again went on record as refusing to recognize the spray machine by prohibiting its use by their members or the recognition of any employer using said machine or associated in any way with the use of one."

The order complained of is very broad, and includes restraint from attempting to collect a fine imposed upon complainant or the fines imposed upon complainant's workmen, members of the local union, "and from threatening or doing anything whatsoever unlawful to prevent or keep union men from working for complainant, and from injuring the business of complainant in any manner, shape or form by any unlawful acts or conduct; and from suggesting, permitting, encouraging or participating in any manner in sympathetic

strikes against complainant on account of, or because of any matter or thing heretofore set up in this cause by said defendants, in justification of their acts in this behalf complained of herein by said complainant."

The language of the order just quoted is vague and uncertain as to the acts sought to be restrained. The order restrains the threatening or doing of things "unlawful" to prevent union men from working for complainant, and restrains defendants from acting in any manner in sympathetic strikes against complainant by reason of any matter or thing set up by defendants in justification of their acts. The order restrains *unlawful* acts but does not point out what specific acts defendants are to refrain from performing, and, in the last clause referred to, requires interpretation by defendants of the pleadings and proofs to determine what acts are restrained.

The vice-chancellor concluded that complainant had been declared to be "unfair" to union labor, and that the union had imposed a fine upon him.

If complainant had been declared to be "unfair," no harm could result unless such declaration was followed by the refusal of employes to work for him and by efforts of defendants to induce others to refrain from working for him.

The fragments of minutes of the defendant union as printed in the record do not disclose that any action was taken by the local union against the complainant. It is denied that any fine was assessed against him. As stated in the conclusions of the vice-chancellor, no fine could be collected from complainant, if it had been assessed.

The question to be decided, then, is as to the right of employes to combine, and, by peaceable means, to refuse to work for an employer who does not conform to the rules of the union, and to persuade others to leave such employment or to refuse to enter such employment.

The court below appears to have concluded that efforts to persuade their members not to work or to discipline them for breaking the union rules were unlawful because the conduct of the complainant was not unlawful.

The finding of the court of chancery in this case is in direct conflict with the legislative policy as declared in the act of 1883, page 36 (*3 Comp. Stat. p. 3051*), which provides "that it shall not be unlawful for any two or more persons to unite, combine or bind themselves by oath, covenant, agreement, alliance or otherwise, to persuade, advise or encourage, by peaceable means, any person or persons to enter into any combination for or against leaving or entering into the employment of any person, persons or corporation."

This act was passed upon by this court in *New Jersey Painting Co.* v. *Local No. 26, Brotherhood of Painters, &c., 96 N. J. Eq. 632*, which involved an application to the court of chancery to enjoin a strike called by the business agent of the union to enforce the demand of the union with respect to wages. In that case Mr. Justice Black, speaking for the court, said:

"The law gives the defendants a right to sell their labor to whom they please, when and under such conditions as they may fix, individually or in combinations. They may make rules and regulations, passed in good faith, providing for what they deem to be an economic advantage to themselves. If, in the enforcement of such rules and regulations, they violate no law, but act solely for the declared purpose, the courts ought not and cannot legally enjoin them from such concerted action, simply because such action may affect some employers. How can it be said that such rules and regulations create an unfair restrain of trade? If the law gives the workers such rights, it must protect them in their enjoyment. They cannot be enjoined from their use or interfered with by the courts. Employers have no vested interest in the labor of workers. We think the defendants, by the terms of the statute of 1882, both its letter and spirit, are within its protection."

In the *Painting Company Case* the controversy arose over wages. In the instant case the difference arose over the alleged conduct of complainant in encouraging the use of machines instead of manual labor to apply paint, which practice the defendants regard as inimical to their economic wel-

fare. If, as was said in the *Painting Company Case,* "the union may arbitrarily fix a uniform scale of wage applicable to all its members and strike to enforce its demands," it may likewise arbitrarily fix conditions of labor, and strike to enforce such demands.

Since the case above referred to was decided, the legislature has adopted the act of 1926 (*P. L. 1926 p. 348*), which provides:

"No restraining order or writ of injunction shall be granted or issued out of any court of this state in any case involving or growing out of a dispute concerning terms or conditions of employment, enjoining or restraining any person or persons, either singly or in concert, from terminating any relation of employment, or from ceasing to perform any work or labor, or from peaceably and without threats or intimidation recommending, advising or persuading others so to do; or from peaceably and without threats or intimidation being upon any public street or highway, or thoroughfare for the purpose of obtaining or communicating information, or to peaceably and without threats or intimidation persuade any person or persons to work or abstain from working, or to employ or to cease to employ any party to a labor dispute, or to peaceably and without threats or intimidation recommend, advise or persuade others so to do, provided said persons remain separated one from the other at intervals of ten paces or more."

Nothing has been proved in this case to warrant a finding that the defendants have done or threatened anything that is not legalized by the acts of the legislature.

It seems clear from the statutes and the decisions of the courts of our own state, as well as of other jurisdictions, that employes may combine for their mutual protection; that they may for themselves conclude what acts and things are for their economic welfare; that they may enforce their demands by strikes, if they thereby violate no contracts of employment; that they may peaceably and without threats or intimidation, induce others to do so, if no contractual rights are violated thereby. None of these acts is unlawful, and the fact that complainant may be affected unfavorably by the regulations of the union established to further their own interests does not render them unlawful.

They have a right to make rules for their guidance and

may impose penalties on their members for infractions of their rules. Complainant has no status to complain of the fines imposed upon members of the union and none such are complaining in this suit. The association is a voluntary one and the workmen may decline to become members or withdraw from membership, if dissatisfied with the conduct of its affairs, as some who were in complainant's employ did withdraw from the union.

In the case of *Toledo, A. A. & N. M. Railway Co.* v. *Pennsylvania Co., 54 Fed. Rep. 746,* the late Chief-Justice Taft, then a circuit judge, said:

"Ordinarily, when such a combination of persons does not use violence, actual or threatened, to accomplish their purpose, it is difficult to point out with clearness the illegal means or end which makes the combination an unlawful conspiracy; for it is generally lawful for the combiners to withdraw their intercourse and its benefits from any person and to announce their intention of doing so, and it is equally lawful for the others, of their own motion, to do that, which the combiners seek to compel them to do."

In the instant case, there is no charge that defendants have resorted to violence or threatened violence. They have merely determined that complainant's conduct was such as to make it desirable for the union, as a group of employes, to decline to work for him, and, without threats or intimidation, have sought to enforce their demands. Nowhere is there evidence of any act not within the provisions of the statutes, as interpreted by this court.

These considerations result in the conclusion that the record before us does not support the order appealed from, and that the bill should be dismissed. The order of the court of chancery is in all respects, reversed, with costs.

*For affirmance*—None.

*For reversal*—The Chief-Justice, Campbell, Lloyd, Case, Bodine, Daly, Donges, Van Buskirk, Kays, Hetfield, Wells, JJ.   11.