JAMES ANNETT, PROSECUTOR, v. EDWARD SALSBERG, RECORDER OF THE TOWNSHIP OF RIVER VALE, AND BOARD OF HEALTH OF THE TOWNSHIP OF RIVER VALE, RESPONDENTS.

Submitted October 1, 1946—Decided January 21, 1947.

Before Justices BODINE, PERSKIE and WACHENFELD.

For the prosecutor, *Samuel J. Davidson.*

For the respondents, *Joseph Frederick Bratl* (*George F. Losche,* of counsel).

The opinion of the court was delivered by

WACHENFELD, J. Three writs of *certiorari* were obtained to test the penalties imposed upon the prosecutor by the Recorder of River Vale Township for the violation of *R. S.* 26:3B–7 (*Pamph. L.* 1945, *ch.* 192, *p.* 654), which provides:

"No person, corporation or municipality knowingly shall maintain or permit to be maintained any accumulation of filth or source of foulness which is hazardous to the health or comfort of any of the inhabitants of this state."

These are companion cases and the situations complained of are similar except as to dates. The three complaints allege violations on June 27th, August 8th and August 11th, 1945, respectively. In each case judgment for $50 and costs were entered against the prosecutor.

The health officer testified as to his knowledge of the defendant's plant, having seen it in operation. There were large quantities of chicken manure on hand. It was shoveled into the mouth of a cylinder which was heated in order to dehydrate the manure, and it emerged as fertilizer. Three or four tons of wet, raw chicken manure produced one ton of fertilizer, while two or three tons of "wetness" went into the air as "foul odor." The odor in the plant was "musty;" outside it was very offensive. There was a "stink" while the plant was in operation. Many complaints were made about it.

Other witnesses testified the odor was "very obnoxious," "terrible," a strong "ammonia smell" like "acid in nostrils," "very uncomfortable," and made the witnesses feel "bilious," with a tendency to "perspire" and become "nauseous." A child of one of the witnesses could not play out of doors because the odor was so offensive.

The defendant offered no testimony at the trials as to the facts and now seeks to have the judgments rendered set aside. The appeal raises four questions: (1) Was the prosecutor unlawfully deprived of his right to a trial by jury? (2) Was the complaint insufficient? (3) Was improper testimony admitted? (4) Is the statute unreasonable and unconstitutional, violating the Fourteenth Amendment of the federal constitution? We are compelled to answer all in the negative.

The right of trial by jury in cases of the instant type was clearly expressed in *McGear* v. *Woodruff,* 33 *N. J. L.* 213, where the court explained:

"Prior to the adoption of the constitution of 1776, convictions before magistrates for petty criminal offenses, and violations of police regulations were of frequent occurrence, and were recognized as part of the laws of England. Since the adoption of that constitution, and prior to the adoption of the constitution of 1844, that practice was pursued in this state without objection. It was not intended, by the seventh section of the first act of the constitution of 1844, to introduce trial by jury in these cases where by law and by long practice the right did not previously exist."

Mr. Justice Depue then goes on:

"Indeed, extensive and summary police powers are constantly exercised in all the states of the Union for the repression of breaches of the peace and petty offenses, and these statutes are not supposed to conflict with the constitutional provisions securing to the citizen a trial by jury."

This court in *State Board* v. *Buettel,* 102 *N. J. L.* 74, held:

"An examination of the authorities establishes beyond question that the right of trial by jury does not extend to actions for penalties for offenses of minor character unknown to the common law."

See *Carter* v. *Camden District Court,* 49 *N. J. L.* 600, where the history of the right of trial by jury is traced by Mr. Justice Parker.

The complaint in this case is couched in the words of the statute and adequately sets forth and apprises the defendant of the offense charged against him. *Levine* v. *State,* 110 *N. J. L.* 467; *State* v. *Larison,* 134 *Id.* 604.

The testimony admitted was not prejudicial or harmful to the defendant and there was ample evidence to prove the allegations of the complaint. The imposition of several penalties was not improper as the statute provided for it.

The statute in question does not violate the Fourteenth Amendment of the United States Constitution.

"Laws and ordinances relating to the comfort, health and good government of the inhabitants of a city are ordinarily

described as 'police regulations,' and, though they may disturb the full enjoyment of a personal right, are constitutional, notwithstanding they do not provide compensation therefor, for they do not appropriate private property for public use, but merely regulate its enjoyment by the owner, who is supposed to be compensated by sharing in the benefits which such regulations are intended to secure. He holds his property subject to the restriction that he must so use it as not to injure another, and an ordinance which so controls his use of it that it shall not prove injurious to his neighbor, or the inhabitants generally of the municipality, is not a taking of his property without compensation." *Atlantic City* v. *France*, 75 *N. J. L.* 910. Accord: *Schwarz Bros.* v. *Board of Health*, 84 *Id.* 735; *Welsh* v. *Morristown*, 98 *Id.* 630.

In *Regal Oil Co.* v. *State*, 123 *N. J. L.* 456, the statute was held unconstitutional for depriving the prosecutor of its property without due process of law in violation of the Fourteenth Amendment of the federal constitution. Mr. Justice Perskie there stated:

"The legal principles involved are rather well established. While it is true that a state may, in the exercise of its police power, pass legislation for the purpose of protecting and regulating public health, public safety, public morals, general welfare (*Cf. New York and N. E. Railroad Co.* v. *Town of Bristol*, 151 *U. S.* 556, 557; 38 *L. Ed.* 269, 273), including public convenience or the general prosperity (*Cf. Bacon* v. *Walker*, 204 *U. S.* 311; 51 *L. Ed.* 499: *Chicago, B. and Q. Railroad Co.* v. *Illinois*, 200 *U. S.* 561, 592; 50 *L. Ed.* 595, 609; *Nashville, C. and St. Louis Railroad Co.* v. *Walters*, 294 *U. S.* 405, 429; 79 *L. Ed.* 949), it is equally true that this power is not without limitations. The means adopted must be reasonably adapted to the accomplishment of that end, and must not be arbitrary or oppressive. *Cf. Triegle* v. *Acme Homestead Association*, 297 *U. S.* 189, 197; 80 *L. Ed.* 575, 580, 581. In other words, the legislation must bear a real and substantial relation to the public health, safety, morals or some other phase of general welfare. *Cf. Liggett & Co.* v. *Baldridge*, 278 *U. S.* 105, 111; 73 *L. Ed.* 204, 208."

The prohibition contained in the instant law is palpably in the interest of public health. The statute bears a direct and substantial relation to it and is obviously a regulation designed to protect the community from the ravages of disease and contagion. It is reasonable, advisable and necessary and therefore, we think, unassailable.

The statute is not so vague as to make it unconstitutional. Its mandates so clearly express the acts condemned that the ordinary person could intelligently and easily conclude what is prohibited. Reasonable certainty fulfills the constitutional requirement, and liberal effect is always given to the legislative intent, where possible.

The writs will be dismissed, with costs.