[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 505 
The bill of complaint alleges that on April 25, 1942, and continuously thereafter, the defendant, James Annett, doing business as Poultek Fertilizer Company, was the owner and operator of a factory building in the Township of River Vale, adjoining the public road known as Sand Road. During the period in question the defendant carried on in said building and premises the business of storing chicken manure and fertilizer in large quantities, and of manufacturing fertilizer by a process of dehydrating said chicken manure. The process of converting the raw manure into fertilizer was accomplished by feeding the raw manure into a rotary drier fired by oil heat whereby the water content of the manure was driven off and the dry product then bagged for storage and distribution. The vapors, fumes and gases emitted from the drier were carried off into the surrounding atmosphere by means of a smoke stack or pipe 30 or 40 feet in height. Defendant is engaged in his business six days a week. After commencing operations in a small way in 1942, defendant's business progressed to such an extent that by 1945 he was producing and selling the fertilizer in car load lots for distribution generally throughout the United States. Shortly after defendant commenced the manufacture of fertilizer in 1942, numerous complaints were received from property owners and residents in the neighborhood that defendant's operations were causing a pollution of the air with foul and noxious odors, gases and vapors, allegedly injurious to their health. The municipal authorities and health officer intervened for the purpose of attempting to find ways and means of remedying the situation, *Page 506 
but without avail. It does appear that the defendant ceased his previous practice of storing the raw chicken manure in the open and that he constructed a large covered pit for this purpose. Also, that the raw manure was treated with lime in an endeavor to suppress and alleviate the foul odors complained of. Whether his efforts were successful in removing the objectionable conditions is a question upon which the witnesses disagree. Suffice it to say, the condition, or nuisance, as plaintiff claims exists, resulted in an action instituted by the board of health against the defendant under R.S. 26:3B-7, P.L. 1945, ch. 192, p.
654, for the recovery of penalties for the violation thereof. In those proceedings the defendant was convicted of three violations of the statute, which convictions were affirmed by the former Supreme Court and the Court of Errors and Appeals on certiorari. See Annett v. Salsberg, 135 N.J.L. 122, 50 A.2d 841(Sup.Ct. 1947) affirmed 136 N.J.L. 194, 54 A.2d 720 (E. A. 1947). The bill of complaint was filed herein under the authority of R.S. 26:3-56. A motion to dismiss the bill was denied by Vice-Chancellor Lewis and, on appeal to the Court of Errors and Appeals, that court dismissed the appeal on the ground that it was prematurely taken, reserving to the defendant the right to assert the grounds of his application on appeal after final hearing, in the event of an adverse judgment against him.
R.S. 26:3-56 provides that the local board of health, instead of proceeding in a summary way to abate a nuisance hazardous to the public health, may file a bill in the court of chancery, in the name of the state, on relation of the board, for an injunction to prohibit the continuance of such nuisance. The powers of the former Court of Chancery are now vested in the Superior Court.
I have read the voluminous transcript and considered the testimony of the witnesses produced on behalf of the parties. The witnesses for the plaintiff testified to their personal experiences with reference to the alleged nuisance. Their testimony was straightforward and convincing. In addition to these witnesses residing in the vicinity of defendant's plant, the Township Engineer, Chairman of the Township Committee, the Westwood *Page 507 
Borough Health Officer, a representative of the State Department of Health, other officials and a practicing physician from the neighborhood involved also testified. From their testimony the following facts emerge: vapors could be seen arising from defendant's plant; on certain days heavy, oppressive, pungent odors were clearly discernible, the odors were very obnoxious, causing headaches and in some instances nausea; the odors were particularly oppressive when the wind was in the right direction and the day was warm, sultry and humid; that the disagreeable odors were noticeable as far as 1000 to 2000 feet away from defendant's plant; that the inhalation of the odors often caused a loss of appetite and a feeling of a desire to vomit; that some of the witnesses had to keep their windows and doors closed day and night and could not remain outdoors; that clothes freshly washed and hung out to dry became saturated with the odors and the smell could not be removed; that the sickening odors made certain of the witnesses sick at their stomaches and upset; that the windows of the public school had to be closed because of the odor; and that by reason of defendant's operations a condition was created that was detrimental to the public health and one that constituted a public nuisance causing ill health. In opposition thereto the defendant testified that the vapors and odors complained of were not noticeable to him and did not affect either him or his employees adversely. He further testified that in response to the complaints received he had endeavored to remove the source of the complaints by storing the raw chicken droppings in a covered pit within his plant and also sprinkled the manure with lime as advised by the health department. Some attempt was made to attribute the cause of the odors to the maintenance of pigs, cows, goats, chickens, other live stock, and garbage that defendant claimed were existent in the neighborhood. The testimony in this respect was not at all convincing. Firman E. Bear, a Professor of Agricultural Chemistry and Research Specialist in Soils at Rutgers University, and Wabun C. Krueger, a Professor at Rutgers University and an extension Agricultural Engineer, were produced by the defendant and their depositions offered in evidence. These experts testified principally on the *Page 508 
topic of poultry manure, its preservation, deodorization and disinfection. They testified that the most effective deodorant for practical use with reference to chicken manure was hydrated lime. These witnesses visited the defendant's plant on April 16, 1946, observed the conditions prevailing there and observed that hydrated lime was being used by the defendant. Whether or not the use of the lime had any appreciable effect upon the disagreeable and obnoxious odors does not conclusively appear. Nor were they able to say whether defendant used lime as a regular practice.
My review of the testimony leads me to the inescapable conclusion that the plaintiff is entitled to injunctive relief from the nuisance complained of. The evidence is overwhelming that defendant's activities were the direct cause of a situation constituting a hazard to the public health and welfare of the community. The test is not whether the condition created by the defendant will inevitably result in disease, but rather whether the condition constitutes a hazard, danger or peril to the public health from its presence. The statute under which the bill of complaint was filed does not require proof that the threatened mischief is absolutely destructive of health, and that such will be the inevitable consequence of the continuing maintenance thereof. The statute has no such narrow limits. The legislative intent appears to be quite clear, when it used the significant phrase including the word "hazard". As stated by Vice-Chancellor Bird in State v. Neidt, 19 A. 318 (Ch. 1890):
"It seems to me that the intention was to submit to the board of health, and to the court of chancery, the power of determining in every such case whether or not every such nuisance may, in any reasonable event, tend to the inviting, generating, fostering, or promoting of disease. This must be so, since the question is not whether there is a nuisance or not; for the whole argument is predicated upon the fact that a nuisance exists. Therefore the whole inquiry is, is there any hazard, danger, or peril to the public health from its presence?"
It was not incumbent upon the plaintiff to establish by the proofs that persons who had been affected by the maintenance of the nuisance had become actually afflicted with a disease as a result thereof. If such proofs were required by this statute, *Page 509 
its effectiveness would depend upon proof of the existence of actual injury instead of mere hazard. The proofs here clearly establish that the nuisance created and maintained by defendant was productive of a hazard to the public health. Consequently, the mischief sought to be controlled by the statute has been proven here, justifying the injunctive remedy sought by plaintiff. State ex rel. Board of Health of Irvington v.Schmidt, 83 N.J. Eq. 35, 90 A. 239 (Ch. 1914); Lyndhurstv. United Cork Co., 116 N.J. Eq. 4, 172 A. 347 (Ch.
1934).
There is no merit in the defendant's contention that the witnesses who testified on behalf of the plaintiff were affected by reason of being sensitive, abnormal or peculiarly susceptible to the situation under consideration. See Board of Health v.Lederer, 52 N.J. Eq. 675, 29 A. 444 (Ch. 1894), opinion by Vice-Chancellor Bird:
"But this condition of mind or body must be established by clear proof. It cannot possibly have reference to that large class in every community that are less robust, or are more feeble in body, or less capable of resisting deleterious influences from without, than many, or it may be a majority, of their neighbors. All citizens are presumed to enjoy a normal condition of mind and body, until the contrary is clearly shown."
There was nothing in the testimony to indicate that plaintiff's witnesses were other than normal persons, in possession of all the usual human faculties. There is no evidence that they possessed any peculiar idiosyncrasies or abnormalities, nor that they were pre-disposed to sickness or had an enfeebled condition of body. The language of Vice-Chancellor Bird in Board of Healthv. Lederer is eminently applicable to the factual situation at bar. The following statements of Vice-Chancellor Bird in Statev. Neidt are applicable to the existence of a hazard to public health under the conditions prevailing here:
"Independently of the judgment of these physicians, I could not very well help concluding that the odors complained of were and are hazardous to the public health. My mind cannot be released from the conviction that when such smells not only compel citizens to retire from their porches and close their doors and windows, both by day and night, and thereby be deprived of a constant supply of fresh, wholesome air, but also cause nausea and sickness of the stomach, and produce retching and vomiting, and oblige them to forego their *Page 510 
meals, that we have then presented very strong proof of hazard or peril or danger to the health of those so affected. But while the testimony of the physicians called by the defendants would, so far as their direct examination extends, raise the impression that such odors are simply unpleasant, and that there is no risk whatsoever to health; yet a careful study of the cross-examination clearly shows that their views coincide with my own, with the exception perhaps of that of Dr. Barwis, whose judgment is that a person may vomit two meals a day and be assured of good health, providing he can retain one."
See also Rowland v. N.Y. Stable Manure Co., 88 N.J. Eq. 168, 101 A. 521 (Ch. 1917), opinion by Vice-Chancellor Backes.
It is my conclusion that the defendant, in his operation of the fertilizer plant, is clearly guilty of maintaining a nuisance hazardous to the public health and it, therefore, becomes the duty of this court to grant an injunction to prohibit its continuance.
I have considered all of the other grounds advanced by the defendant in support of his contentions and find them to be without merit.
Plaintiff is entitled to injunctive relief in accordance with its bill of complaint and it will be so ordered.