66 N.J. Super. 334 (1961)
169 A.2d 165
THE STATE OF NEW JERSEY, EX REL. THE BOARD OF HEALTH OF THE TOWNSHIP OF SADDLE BROOK, PLAINTIFF-RESPONDENT,
v.
SOMMERS RENDERING COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT. SOMMERS RENDERING CO., PLAINTIFF-APPELLANT,
v.
BOARD OF HEALTH OF THE TOWNSHIP OF SADDLE BROOK, IN THE COUNTY OF BERGEN, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 13, 1961.
Decided March 27, 1961.
*336 Before Judges CONFORD, FREUND and KILKENNY.
Mr. Ralph W. Chandless argued the cause for appellant (Messrs. Chandless, Weller & Kramer, attorneys).
Mr. Joseph J. MacDonald argued the cause for respondent (Mr. Walter H. Jones, attorney).
The opinion of the court was delivered by KILKENNY, J.A.D.
In these consolidated actions, the Superior Court, Chancery Division, granted a judgment whereby it enjoined Sommers Rendering Company from using its premises and conducting its fat rendering business in the Township of Saddle Brook, Bergen County, New Jersey, "in such manner as to cause the emission and prevalence of foul and noxious odors in the vicinity surrounding said premises." It further ordered that "unless the defendant immediately remedies and corrects certain conditions in its premises contributing to the existence of the foul and noxious odors and operates its business in such a way as to eliminate or substantially abate the existence thereof, then defendant *337 shall cease the operation of its rendering plant or so much of it as relates to the rendering, cooking and storage of waste animal products and of exposed waste waters."
The Sommers Rendering Company appeals from this judgment, contending that the plaintiff was not entitled to the injunction and that the judgment of the Chancery Division exceeded the jurisdiction of the court.
The plaintiff local board of health brought the action pursuant to the authority vested in it by N.J.S.A. 26:3-56 which provides:
"The local board, instead of proceeding in a summary way to abate a nuisance hazardous to the public health, may institute an action in the Superior Court in the name of the State, on relation of the board, for injunctive relief to prohibit the continuance of such nuisance."
At the trial the defendant offered no testimony or other evidence to contradict the proofs submitted by the plaintiff board of health. The facts adduced at the trial establish the following. The defendant has operated a rendering plant in the Township of Saddle Brook for at least 50 years last past. The rendering consists of cooking and pressing waste butcher-shop fats and dead animal stock to produce a tallow, with cracklings, used for animal feed as a side product. The plant is located in an area which was rural and sparsely settled in years gone by, but which gradually has become considerably populated with residences. The nearest residences at the time of the hearing were about 600 feet south and 800 feet north of defendant's premises.
A number of citizens in these relatively nearby residences and the secretary of the local board of health established by their testimony that at various times during the year, especially in the hot summer months, or when a strong wind is blowing in the direction of their homes, unbearably foul and noxious odors emanate continuously from the defendant's plant, except on days when it is not operating. These offensive smells permeate the atmosphere and befoul the homes and clothing of these residents, causing some of *338 them to become ill, producing extreme discomfort, dulling their appetites, spoiling their meals, and interfering with normal social and family functions. It is necessary to keep their doors and windows closed to minimize these obnoxious odors. These odors were variously described by the several witnesses as "sickening"; "nauseating"; "a very obnoxious smell and it is very upsetting to the stomach"; "very vile"; as "one from which you get a burning sensation in the nostril"; "it just seems to get into the nostrils and down and upsets." One of the witnesses testified: "It is hard to describe, a combination of rotten eggs and formaldehyde." The foregoing characterizations sufficiently indicate the nature of the "foul and noxious odors" restrained by the injunction of the trial court. They unmistakably emanated from the defendant's premises. Their offensive nature and disturbing effects clearly constitute them a nuisance hazardous to the public health.
The Superior Court has jurisdiction to abate such nuisances on the application of a local board of health. N.J.S.A. 26:3-56. The corruption of the air by noisome odors and smells, to the annoyance and inconvenience of the public and hazardous to the public health, constitutes a public nuisance suppressible by injunction at the suit of the local board of health. The guilty party is also subject to criminal prosecution. Garrett v. State, 49 N.J.L. 94 (Sup. Ct. 1886). Prior to its revocation, defendant had a permit to operate from the local board of health. But, as noted in Garrett v. State, a permit does not authorize the conduct of the business in such a way as to create a public nuisance. In Garrett the business was that of extracting fats from dead animals and converting the rest into fertilizers. The process created nauseous and offensive odors to an extent sufficient to create a public nuisance. Garrett's conviction of maintaining a public nuisance was affirmed. This case was cited with approval in Board of Health of Weehawken Tp. v. New York Central R. Co., 4 N.J. 293, 299 (1950), in which the defendant railroad's emission of smoke of proscribed *339 density within the municipality was denounced as a public nuisance and convictions for violating the local health ordinance were affirmed.
There is nothing novel or unusual about the grant of injunctions against fat rendering plants to abate their foul and noxious odors. In State v. Neidt, 19 A. 318 (Ch. 1890) (not officially reported), in which a local board of health sought injunctive relief against a fat rendering establishment, the evidence showed that more than a dozen individuals living in the vicinity were made sick at their stomachs or nauseous by the odors; that some lost their appetites and were unable to eat their meals; and that they were forced to close windows to keep out the odors which continued with some frequency. The court granted the injunction, holding that the odors were hazardous to the public health within the meaning of the statute. It stated:
"When such smells not only compel citizens to retire from their porches and close their doors and windows, both by day and night, and thereby be deprived of a constant supply of fresh wholesome air, but also cause nausea and sickness of the stomach, * * * and oblige them to forego their meals * * * we have then presented very strong proof of hazard or peril or danger to the health of those so affected."
Other cases with parallel factual patterns involving fat rendering operations and in which injunctive relief was granted in suits by local boards of health are: Board of Health of North Brunswick v. Lederer, 52 N.J. Eq. 675 (Ch. 1894); Board of Health of Raritan v. Henzler, 41 A. 228 (Ch. 1898) (not officially reported).
The defendant points to the case of Board of Health of Wayne Township v. Paterson Tallow Company, 1 N.J. Super. 397 (Ch. Div. 1947), another case involving a fat rendering plant, in which the injunction was denied. However, the facts there are distinguishable in that the trial court found that the plant was located in a rural and still sparsely settled area and that there was no odor away from the plant, but only a trade odor of a cooking type within *340 the plant and immediately about it. In brief, the proofs did not establish there that the defendant's plant was being operated as a nuisance hazardous to the public health.
N.J.S.A. 26:3-56 authorizes abatement of a condition as a nuisance not only where it is shown to be actually injurious to health but also where it is likely to be so. Board of Health of Lyndhurst v. United Cork Co., 116 N.J. Eq. 4 (Ch. 1934), affirmed 117 N.J. Eq. 437 (E. & A. 1935); Board of Health of Caldwell v. Shaw, 113 N.J. Eq. 507 (Ch. 1933); Board of Health of Irvington v. Schmidt, 83 N.J. Eq. 35 (Ch. 1914).
As pointed out in Board of Health of Rivervale v. Annett, 1 N.J. Super. 503 (Ch. Div. 1948), the test is not whether the condition created by the defendant will inevitably result in disease, but whether the condition constitutes a hazard, danger or peril to the public health by its presence. There the court held that odors emitted by the operation of a chicken manure fertilizer establishment, which polluted the air to such a degree as to produce gagging and nausea, compelled residents to keep their doors and windows shut, and distressed them at their meals, were an enjoinable public nuisance.
Defendant presses upon us the general rule that a nuisance, in order to be enjoinable under N.J.S.A. 26:3-56, on the ground that it is hazardous to the public health, must be such a nuisance as would subject defendant to an indictment. State v. Paterson Tallow Company, supra; State v. Jennings, 131 N.J. Eq. 511 (E. & A. 1942); State v. Mundet Cork Corp., 126 N.J. Eq. 100 (Ch. 1939), affirmed 127 N.J. Eq. 61 (E. & A. 1940). But this means only that it must be a public as distinguished from a merely private nuisance; that it must affect a considerable number of persons. While the authority to abate a public nuisance generally resided solely in the courts of criminal jurisdiction at common law, Hedden v. Hand, 90 N.J. Eq. 583, 594 (E. & A. 1919), by exception to that rule a court of equity always had concurrent jurisdiction *341 to restrain a nuisance which was dangerous to public health. State Board of Milk Control v. Newark Milk Co., 118 N.J. Eq. 504, 512 (E. & A. 1935). The "duty of protecting the public interest, vested by common law in the attorney general, may be diverted from him by the legislature and conferred on some other officer or public body. * * * The statute under consideration [N.J.S.A. 26:3-56] bestows on the local board [of health] in lieu of the attorney general, the duty of vindicating the public right." State v. Mundet Cork Corp., supra, 126 N.J. Eq., at p. 103.
The facts in the instant case indicate a public nuisance, which would have been indictable at common law, because it jeopardizes the public health. It would also have been enjoinable by a court of equity. After an initial hearing at which the existence of the nuisance in this case was established, the trial court continued the hearing on defendant's assurances that new methods of operation were being installed to eliminate the odors, and that the new system would be completed within two weeks. When the trial resumed six weeks later, the uncontradicted testimony then showed that some improvements had been made and the odors had lessened somewhat, but the nuisance had not been eliminated. Plaintiff's expert described the remaining smell as a combination odor derived from the "roasting of putrid meat" and a "decaying organic body." When asked what actions would be necessary to eliminate or substantially abate these odorous conditions, his answer was:
"a clean-up of the plant, a processing of the water that is going out of the plant, and making the plant tight so that you can't get the odors from the interior of the plant out in the wind, and a general clean-up of the grounds and the surrounding area, getting rid of that decaying material that is there on the outside, processing that still more thoroughly; those, in my opinion, would perhaps almost entirely eliminate it."
Thereupon, the trial court determined, and properly so, that the smell still existed and must be ended.
*342 We note that the defendant has operated his establishment for many years. However, carrying on an offensive trade for 20 or more years in a place remote from buildings and public roads does not entitle the owner to continue in the same place after houses have been built and roads laid out in the neighborhood, if such continuance is a nuisance to the residents in those houses and to travellers on the roads. Board of Health v. Lederer, supra. Nor does endurance of the nuisance for years constitute laches, since every day's continuance is a new nuisance. Rowland v. New York Stable Manure Co., 88 N.J. Eq. 168, 175 (Ch. 1917).
Defendant further argues that the judgment of injunction is insufficient for indefiniteness and failed to determine what was to happen to defendant's license to operate.
As to the form of the injunction, R.R. 4:67-5 provides:
"Every order granting the injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other documents, the act or acts sought to be restrained."
The injunction should be plain and certain on its face. It should not be vague and uncertain, but should be reasonably specific, so that the person enjoined may readily know what he must do or refrain from doing. Richards v. West, 3 N.J. Eq. 456 (Ch. 1836); Bayer v. Brotherhood of Painters, etc., 108 N.J. Eq. 257, 259 (E. & A. 1931); State Bd. of Milk Control v. Newark Milk Co., 118 N.J. Eq. 504, 524 (E. & A. 1935); Evening Times Printing & Pub. Co. v. American Newspaper Guild, 124 N.J. Eq. 71, 75 (E. & A. 1938); Yonadi v. Homestead Country Homes, 35 N.J. Super. 514, 517 (App. Div. 1955); Sun Dial Corp. v. Rideout, 17 N.J. 517, 519 (1955).
Insofar as the judgment enjoins the defendant from using its premises and conducting its business "in such manner as to cause the emission and prevalence of foul *343 and noxious odors in the vicinity surrounding said premises," it is reasonably clear and specific in its application to the instant facts. "It is hard to describe a bad smell." Rowland v. New York Stable & Manure Co., supra, 88 N.J. Eq., at p. 170. Defendant's argument that the court could not properly do more than order the discontinuance of specified particular features of its operation is unsound. Defendant, better than anyone else, knows or should know what was causing the odors. The extent and nature of the odors made their dissemination enjoinable. Moreover, defendant made no objection before the trial judge to the wording of the injunction, other than to submit an alternative form which is not before us. Nor has the defendant applied to the trial court at any time since the entry of the judgment for any modification thereof.
Defendant particularly objects to the further order in the judgment, which provides that "unless the defendant immediately remedies and corrects certain conditions in and about its premises contributing to the existence of the foul and noxious odors and operates its business in such a way as to eliminate or substantially abate the existence thereof, then defendant shall cease the operation of the rendering plant or so much of it as relates to the rendering, cooking and storage of waste animal products and of exposed waste waters." (Emphasis added.) We find some merit in defendant's present objection to this quoted provision. While the court may have intended the "certain conditions" to embrace the quoted factors referred to above by plaintiff's expert witness, which, as he testified, must be eliminated to abate the odorous conditions, the indefiniteness of the language and lack of reasonable detail seem to contravene the requirements of R.R. 4:67-5.
Furthermore, before the trial court entered the judgment of injunction, the defendant had already made some substantial efforts to ameliorate the situation. It had also promised to proceed immediately and diligently with any further requirements. The trial court had stated:
*344 "Prepare a Judgment that will give the defendant an opportunity to get rid of this water outside and the cleaning up of the grounds and tightening up of the building, and then we will see what happens. * * * I do not want to put the man out of business, but that is what I will have to do unless the smell stops."
In holding that the nuisance complained of should be abated to the extent that it worked hazard to the public health, the court said in State v. Neidt, supra (19 A., at p. 321):
"It does not follow from this that the business in which defendants are engaged must necessarily be discontinued by them at the place now occupied by them in carrying it on. * * * The court certainly has no right to go beyond the prevention of the mischief which the statute was aimed at."
The form of judgment did not clearly and definitely refer to the items enumerated by the court and by its generality posed the proverbial "sword of Damocles" over the head of the defendant. We doubt that the trial court, which had properly indicated at the first hearing the equitable view that "the defendant is always given an opportunity to cure the thing," intended to close the defendant's business if "certain conditions," not specified, were not "immediately" remedied. But this is the literal import of the last restraining paragraph of the injunction. Plaintiff's object in bringing suit was sufficiently secured by the first restraining paragraph of the injunction. For its violation, defendant would be punishable as for a contempt. We do not preclude the possibility of a court order that might require the defendant to cease operation of its plant, if such course is eventually necessary, if the defendant cannot or will not correct a nuisance hazardous to the public health.
We have concluded that that paragraph of the judgment beginning "It is further ordered," down to the words at the end thereof "exposed waste waters," should be deleted from the judgment; but that the other provisions of the judgment shall remain in full force and effect. This is *345 without prejudice to the right of the plaintiff to apply to the trial court in the future for any supplementary order deemed necessary and appropriate to abate any further nuisance emanating from defendant's premises and caused by its use thereof or the conduct of any business operations thereon.
It is true, as defendant points out, that the judgment appealed from makes no formal disposition of defendant's Law Division action, in which it sought restoration of its board of health permit, revoked by the local board because of defendant's conduct in operating its plant as a nuisance hazardous to the public health. This action at law had been consolidated with the plaintiff board's injunction suit in the Chancery Division. However, the absence from the judgment of a provision disposing of defendant's Law Division suit was simply due to the failure of the plaintiff to include it in the form of judgment submitted for the court's signature; and defendant's failure to object to its non-inclusion, or to seek an appropriate modification of the judgment entered.
Furthermore, the parties had agreed to try the injunction action only and to treat its determination as dispositive of both actions. Obviously, the decision that defendant's business constituted a nuisance hazardous to public health justified the revocation of the board of health permit, until such time as defendant's plant operations were free from such a hazard.
It is inopportune, therefore, for the defendant to raise this formal deficiency for the first time on appeal. Application should have been made, and may still be made, to the trial court by either party for an appropriate supplementary order disposing of the defendant's Law Division action. The parties may consent to the form of order or they may have it settled by the trial court upon due notice.
Except as to the above noted modification in the form of the injunction, the judgment is affirmed.