This matter is before the court on the return of an order to show cause containing ad interim restraint issued upon the *Page 251 
filing (with leave of the court) of a supplemental bill of complaint.
The court on January 3d 1939, issued an injunction restraining the United Retail Employes of Newark, New Jersey, Local No. 108 (affiliated with the C.I.O.), and certain of its members from picketing the premises of complainant, distributing certain handbills and hindering and obstructing persons seeking ingress to the complainant's premises, or desiring to make delivery of merchandise to complainant.
It is charged in the supplemental bill of complaint and sustained by the evidence that on January 25th, 1939, a true copy of the injunction issued by the court was served upon Freida Goldberg, the person in charge of the office maintained by the New Jersey League of Women Shoppers, a voluntary organization and a branch of the National League of Women Shoppers. Notwithstanding this, the New Jersey League of Women Shoppers caused representatives of its organization to be stationed close to the entrance of complainant's store and on the curb of the sidewalk opposite to the entrance thereof who distributed to prospective customers and passersby on January 22d, February 1st, 6th, 16th, 24th and 25th, handbills reading as follows:
 "DO YOU SPEND MONEY WISELY? ? DON'T LET YOUR DOLLAR SUPPORT ANTI-UNION FIRMS
We Do Not Buy At — KITTY KELLY SHOE STORE RED CROSS SHOE STORE 159 Market St. 103 Halsey St. Newark Newark
 WHOSE EMPLOYES WENT OUT ON STRIKE FOR IMPROVED WORKING CONDITIONS
THE NEW JERSEY LEAGUE OF WOMEN SHOPPERS, an organization of the consumers interested in fair labor standards, has carefully investigated the labor disputes at these stores. It has interviewed the Store managements. It has interviewed the employes.
* The stores claim they are not anti-union. Yet they will not negotiate with the union to settle the dispute.
* STRIKEBREAKERS NOW REPLACE UNION EMPLOYES at these shoe stores
* Union conditions mean decent labor conditions.
* These stores are non-union. *Page 252 
We as consumers do not want our money to support any anti-union firms.
 HELP THESE MEN GET THEIR JOBS BACK! USE YOUR BUYING POWER FOR JUSTICE!
NEW JERSEY LEAGUE OF WOMEN SHOPPERS 207 Market St. Newark, N.J."
The controversy which had arisen between the complainant and its employes had to the knowledge of the New Jersey League of Women Shoppers, been submitted to the court in the orderly manner provided by the constitution and the law of this state. The court after hearing the sworn testimony of the witnesses offered on both sides of the controversy and after considering the arguments of the respective counsel decided the issue. The force of that decision was thereafter not only binding upon the actors in the case but likewise upon the defendant league.
According to the affidavit made by the president of the league, the purpose of the league as expressed by its constitution is "to investigate industrial disputes and unjust conditions affecting workers and governed by the merits of the situation it recommends or takes such action as may be feasible in helping to bring about industrial justice for workers through mediation, throughactivities in strikes, and through other activities relating to living costs and labor standards." (Italics mine.) The president continuing says that a committee of the league interviewed the complaining employer and also the employes, and when the committee reported to the executive committee of the league, it was "voted to endorse the union and the actions of theemployes, and to publicize the results of the committee's findings * * * and to distribute leaflets or handbills." (Italics mine.) Attached to the answering affidavits of the defendant league are bulletins which it admits it issued containing such statements as "The United Retail Employes' Union, Local 108, has been a favorite victim of the court. Seven strikes called by this union alone, * * * have been hampered or killed by restraining orders." "League endorses Kitty Kelly Employes" "Drive on Chancery Court's Anti-Labor Rulings." "This organization and the State Federation of Labor are now *Page 253 
planning a concerted drive against the injunction evil. Our own organization, as well as many others, will participate in this work."
Admittedly the league in the instant case refuses to recognize or obey the lawful decree of this court and by the acts complained of is attempting to force upon the complainant against its will the judgment of the league instead of the decree of the court. The posting by the league of its representatives in front of the store entrance of complainant and at the curb of the sidewalk opposite the store entrance for the purpose of distributing the handbill hereinabove set forth constitutes picketing. These persons are posted at the points mentioned to distribute handbills in order to bring about a result contrary to the wishes of the complainant. Mr. Justice Case speaking for the court of errors and appeals in Evening Times, c., Co. v.American Newspaper Guild, 124 N.J. Eq. 71 (at p. 79), construed what is meant by picketing. After quoting the definition of the word "picket" by Webster in his dictionary, the learned justice said: "An added function of the picket, not contained in the quoted language but nevertheless now quite generally recognized, is to seek to influence, frequently by placards or banners carried by the picket, the public against patronizing the employer. Whether or not the book definitions are short of the current acceptance of the term, they serve to distinguish picketing from other forms of strike activities by naming, as attributes, a `posting' at a `station' for the purpose of accomplishing a result contrary to the wishes or the plans of those who control the premises or who have business or other interests there."
Acts destroying a complainant's business, custom and profits do an irreparable injury and authorize the issuance of a preliminary injunction. The object of a preliminary injunction is to prevent some threatening, irreparable mischief which should be averted until opportunity is offered for a full and deliberate investigation of the case. Evening Times, c., Co. v. AmericanNewspaper Guild, supra.
The avowed purpose of the league in picketing complainant's place of business and distributing the handbills and *Page 254 
leaflets complained of is to induce or compel complainant to accept the demands of the union, and by the same method to persuade or induce other persons not to deal with complainant. This is unlawful and constitutes secondary boycott. Martin v.McFall, 65 N.J. Eq. 91; 55 Atl. Rep. 465; Barr v. Essex TradesCouncil, 53 N.J. Eq. 101; 30 Atl. Rep. 881; J.D. Loizeaux LumberCo. v. Carpenters and Joiners Local, c., (unreported, Docket 53, page 606).
The weight of authority is that one may be intimidated into doing, or refraining from doing some act, by fear of loss of business, property or reputation, as well as by dread of loss of life, or injury to health or limb; and the extent of this fear need not be abject, but only such as to overcome his judgment, or induce him not to do, or to do, that which otherwise he would have done or have left undone. Barr v. Essex Trades Council,supra. No relationship or grievance exists between complainant and the league. The interference of the league with the business of complainant by picketing and the other acts complained of is entirely unwarranted and illegal. Feller v. Local 144,International, c., Union, 121 N.J. Eq. 452; 191 Atl. Rep. 111;The Mode Novelty Co. v. Taylor, 122 N.J. Eq. 593;195 Atl. Rep. 819.
The order to show cause will be made absolute, and preliminary injunction will issue. *Page 255