The bill is for injunction to restrain the defendant labor union and its agent from distributing circulars among complainant's customers, asking such customers to refrain from purchasing complainant's products because complainant's establishment is non-union.
The cause came up on complainant's application for restraintpendente lite; but at the hearing, by agreement of counsel, the case was submitted for determination as on final hearing.
Defendants' brief admits the facts to be as set forth in complainant's bill.
The facts, then, admittedly are: — that complainant is engaged in the business of the manufacture, sale and distribution of soft drinks and carbonated water and employs some *Page 521 
25 employes; defendants are a labor union and its business agent; none of complainant's employes are, or ever have been, members of the defendant union or any other union; no labor dispute exists between complainant and its employes or any of them; none of complainant's employes are out on strike, or ever have been; complainant has always observed the provisions of the National Labor Relations act; no complaint has been filed with the National Labor Relations Board as to any acts or conduct by complainant; none of complainant's employes nor any other person except defendants have requested recognition by complainant of defendant's union or any union as a bargaining unit for complainant's employes.
Defendants presented to complainant a proposed contract between complainant and defendant union and asked complainant to enter into it. This contract, by its terms, acknowledged and recognized the defendant union as the appropriate bargaining unit or agent on behalf of complainant's employes. Defendants did not claim that the defendant union had amongst its members a majority of complainant's employes or even that any employe was such member. Complainant refused to sign the agreement and defendants then stated that they would "advertise" complainant. Shortly thereafter, defendants distributed circulars among customers and prospective customers of complainant. These circulars state that complainant's beverages are "non-union made;" they ask the customers or prospective customers to purchase "union made beverages" from certain named companies in Trenton. By clear implication they ask the customers and prospective customers not to patronize complainant; and by further implication they give the impression that the wages, hours and working conditions of complainant's employes are less favorable than those of employes in union shops. Complainant's business has been diminished and will be greatly diminished and irreparably damaged, if not completely destroyed, as the result of the distribution of these circulars.
It is the obvious and necessary conclusion from the facts set forth that defendants' purpose in distributing the circulars is to diminish complainant's business in order to force complainant to sign the proposed contract with defendant. *Page 522 
It seems clear that the determination in Kitty Kelly ShoeCorp. v. United Retail, c., 125 N.J. Eq. 250, 5 Atl. Rep.
2d 682, is controlling and dispositive of the present case. See, also, Feller v. Local 144, International, c., Union,121 N.J. Eq. 452, 191 Atl. Rep. 111.
In that case it was held that the interference with the business of complainant by the distribution of hand-bills and leaflets, by an outside organization as to whom no slightest relationship of employer and employe existed on the part of complainant, was unwarranted and illegal, and would be enjoined. Indeed, the defendants in the instant case occupy an even less favorable position than the outside organization in the KittyKelly case; because in the Kitty Kelly case the outside organization was assuming to act for the benefit of a labor union and five members of that union who had previously been employes of the complainant and had gone on strike in the course of a labor dispute (their places having subsequently been filled). In the instant case there is not, and has not been, any strike; there is not and has not been any labor dispute; none of complainant's employes are or ever have been members of the defendant union. The defendant union is an utter outsider trying to force its will both upon complainant and complainant's employes.
Doubtless it should be pointed out, to avoid possibility of confusion, that the decree of reversal entered by the Court of Errors and Appeals on October 26th, 1939, on an appeal in thisKitty Kelly case, had nothing to do with the Chancery decree or opinion in that case above mentioned. The Chancery decree which was appealed from and reversed was a prior decree which restrained the union and its five striking members. Moreover, there is nothing whatever in the appellate opinion in any wise contrary to the legal principles set forth in the above mentioned Chancery opinion. The reversal was based solely on the ground that the facts alleged in the bill against the union and the original defendants (the union and its five striking members) had not been sufficiently proven by the affidavits to warrant the restraint pendente lite.
Defendants rely upon Perfect Laundry Co. v. Marsh, 120 N.J. Eq. 508,186 Atl. Rep. 470, but that case is not in point. *Page 523 
In that case the persons who distributed the circulars were strikers, former employes of the complainant company, and the object of the attempted boycott was perfectly lawful, i.e., the attempt by employes to get higher wages. In the instant case the circulars are being distributed and the boycott is being attempted by an outside organization and for the purpose of that organization obtaining control of complainant's employes and compelling complainant to establish a union shop.
So also with the case of John R. Thompson Co., Inc., v.Delicatessen, c., 126 N.J. Eq. 119, 8 Atl. Rep. 2d 130.
In that case also the distribution of circulars and the boycott attempted thereby were the acts of a labor union on behalf of five of its members who were former employes of complainant and went on strike in furtherance of their side of a labor dispute, — which was also a lawful purpose.
And again in Newark Morning Ledger Co. v. Suburban NewsDealers' Ass'n, c., 9 N.J. Mis. R. 373, 154 Atl. Rep. 534, the purpose of the attempted boycott was lawful.
In the instant case the purpose of the attempted boycott seems clearly unlawful. Defendants have no right to seek to compel the complainant to sign an agreement whereby it agrees that the defendant union is the agent of complainant's employes, — when such is not the fact, — when complainant's employes are not, nor are any of them, members of the defendant union, and have not, nor have any of them, appointed the defendant union as their agent.
Indeed, if complainant should enter into such an agreement with the defendant union, it might well be that such act would constitute a violation by complainant of the terms of the National Labor Relations act which provides that employes shall have the right to self-organization and to choose their own representatives; that it shall be unfair labor practice for an employer to interfere with its employes in regard to these rights; and that the exclusive representatives of the employes shall be those selected by the majority of the employes.
True it is that it is not shown that complainant is engaged in interstate commerce, but it is proven and admitted that complainant has observed and desires to observe the provisions *Page 524 
of that federal statute, and it is quite possible that complainant might be held to be engaged in interstate commerce and therefore subject to the provisions of that statute. The law with respect to the extent of the applicability of the interstate commerce clause has been constantly broadened and has not yet become settled and complete.