The case presents appeals from two orders in chancery, entered on the advice of Vice-Chancellor Egan, restraining the defendants-appellants, pending final hearing, from certain activities in their strike against the complainant publisher of the Bayonne Times, a daily newspaper. The bill recites the differences between complainant and the defendants, one of which was that the defendants demanded a "closed shop" contract, recites further the incidents of the strike and the alleged unlawful actions of the defendants, charges imminent irreparable damages and prays a perpetual restraint against enumerated activities. The matter is here *Page 73 
on bill of complaint, order to show cause, complainant's affidavits in support, defendants' affidavits in denial and the orders of preliminary restraint. If there be an answer, it is not before us and has no part in our study.
Setting off the defendants' proofs against those submitted by the complainant, it is still reasonably certain that on the morning of November 12th, 1937, there were conditions at the newspaper plant which amounted to mass picketing by the defendants; that disorder ensued which resulted in the calling of the police; that there were physical collisions and that the provocative name of "scab" was flung at those who remained or attempted to remain at their work. It clearly appears that later there was a systematic offensive against merchants of the city of Bayonne who had no connection with either complainant or defendants and no part in the issues other than that they were advertisers in the newspaper and that if an advertiser did not, upon request, withdraw his advertisement, his place of business was subjected to patrol by individuals who carried a placard containing this or a similar wording: "This store advertises in the Bayonne Times which is unfair to its reporters;" also that defendants operated a sound truck which, equipped with a loud speaker and an amplifying device which caused the statements therefrom to be audible for several blocks, proceeded at a slow speed of approximately five miles per hour through the principal avenues, made other announcements and proclaimed, specifying theBayonne Times by name, "Don't read a scab newspaper," "Don't buy a scab newspaper," "Don't advertise in a scab newspaper." Immediate resort was had by complainant to the court of chancery. From and including November 13th, 1937, defendants have been under constant restraint, first by ad interim stay contained in the order to show cause and following the determination of the order to show cause by the preliminary injunctions now under review.
An objection is raised by the defendants which, if well made, militates in limine against the allowance of any preliminary injunction, namely, that defendants filed affidavits in denial of those presented by the complainant and that *Page 74 
consequently all restraint should have been denied. Ordinarily, preliminary injunctive relief will not be granted where complainant's affidavits in support of the bill are met by a full, explicit and circumstantial denial under oath (BayonneTextile Corp. v. American Federation of Silk Workers, 116 N.J. Eq. 146), but this general rule has, from the enunciation of it, been recognized as having exceptions. Citizens Coach Co. v.Camden Horse Railroad Co., 29 N.J. Eq. 299 (at p. 306). (Note the procedure followed by Vice-Chancellor Stevenson in JerseyCity Printing Co. v. Cassidy, 63 N.J. Eq. 759, 770.) Moreover, it will appear from the brief resume of facts given supra that the affidavits filed by the defendants do not contain the explicit, circumstantial and convincing denials which the sponsors impute to them. Where the denials fail in preciseness and particularity and do not carry conviction, and upon the entire showing from both sides it appears reasonably probable that the complainant had the right claimed, the injunction may issue. Ideal Laundry Co. v. Gugliemone, 107 N.J. Eq. 108. The object of a preliminary injunction is to prevent some threatening, irreparable mischief which should be averted until opportunity is offered for a full and deliberate investigation of the case. Thompson, ex rel. Board of Chosen Freeholders v.City of Paterson, 9 N.J. Eq. 624; Meyer v. Somerville WaterCo., 79 N.J. Eq. 613, 615. Acts destroying a complainant's business, custom and profits do an irreparable injury and authorize the issue of a preliminary injunction. Scherman v.Stern, 93 N.J. Eq. 626. If the methods undertaken by the defendants had been permitted while the lawfulness of them and of the strike was being tried out, the probability is that publication would have been indefinitely interrupted and the complainant irreparably damaged. The urgency of the need for uninterrupted publication of a daily newspaper is apparent. As we view the conditions, the complainant was confronted with three possible courses of action: submit to irreparable injury, surrender without contest, or seek injunctive relief. It chose the last. The state of proofs was not such, in our opinion, as to prevent the granting of restraint pending final hearing. *Page 75 
We proceed to consider the several restraints, which the orders set out in lettered paragraphs. There are seventeen designated (a) to (q), respectively, in the order of November 22d 1937, and two, designated (a) and (b), respectively, in the supplemental order of December 1st, 1937.
Paragraphs (a) to (f) inclusive, and paragraphs (i), (m) and (p) of the order of November 22d 1937, may be summed up as restraining the defendants from committing personal molestation with intent to coerce, from addressing willing workers to the point of annoyance, from loitering or picketing in the streets with intent to procure molestation or effect annoyance to workers in order to stop them from working, from using violence and making threats thereof, from voicing insults, abusive epithets and like annoyances upon workers with intent to coerce, from going to the homes of the complainant's employes for the purpose of intimidating, annoying or coercing them to leave its employ, and from directing or aiding others to commit such acts; also from using coercion upon advertisers to accomplish withdrawal of their advertisements. Actions of this sort, involving molestation, violence, coercion, compulsion, insults and the like, whether part of or independent of a picketing process, were, we think, on the facts as shown, properly within the scope of the preliminary injunction. International Ticket Co. v.Wendrich, 123 N.J. Eq. 172; Keuffel Esser v. InternationalAssociation of Machinists, 93 N.J. Eq. 429. Comparison of the facts and the mentioned items of restraint with chapter 207,P.L. 1926, infra, makes clear that the facts take the case out of the statute and that the restraints allowed are not amongst those forbidden.
We find no error in the allowance of those restraints.
The restraint in paragraph (g) is "From making any illegal effort to coerce the complainant to enter into any contract or agreement with all or any of the defendants." The emphasis is upon the "illegal" phase of the effort. It is illegality that is restrained. How are the defendants to know with certainty whether a proposed act is or is not illegal? Disobedience of an injunctive order may be followed *Page 76 
by a finding of guilt in criminal contempt and by punishment accordingly. A writ of injunction should be the criterion for the person who is enjoined. It should be plain and certain on the face of it. Richards v. West, 3 N.J. Eq. 456. To restrain the threatening or doing of things "unlawful" and not to point out what specific acts are under restraint is to leave the order vague and uncertain. Bayer v. Brotherhood of Painters, c.,301, 108 N.J. Eq. 257, 259.
We consider that paragraph (g) of the order and also paragraphs (k), (l), (n) and (o) which use comparable expressions are vague and uncertain as to the acts to be restrained and therefore should not stand.
Paragraph (h) introduces no really new matter except that it limits the number of pickets operating against complainant's place of business. No plant conditions which would entitle the defendants to a larger number are shown.
Paragraph (j) is in part subject to the faults of vagueness and uncertainty found to exist in the paragraphs typified by (g)supra. It may remain if shorn of those qualities, otherwise it will be stricken.
Paragraph (q) enjoins in the following language:
"From causing or permitting sound trucks, equipped with loud speaking apparatus, to be transported through the streets of the City of Bayonne, making announcements of the existence of a strike in the plant of the complainant, or from placing said sound truck either on the public highways or other places from which announcements of the existence of said strike is being made."
It seems clear that a sound broadcasting contrivance may, by the repetitious blaring of nerve racking sounds become a nuisance, either public or private, and, if a private nuisance, subject to a prohibitory injunction. It has been held that so popular a device as a talking machine, operated from a doorway along a public sidewalk, may, by its manner and frequency of use, become an enjoinable private nuisance. Stodder v. RosenTalking Machine Co., 241 Mass. 245; 135 N.E. Rep. 251. That, however, is not precisely the present issue. It is, as we understand, the making of alleged misrepresentations *Page 77 
and the offensiveness of the language to which the complainant objects; and that which is sought is a preliminary restraint against an act which, it is said, tends to work irreparable mischief while the cause is in progress. It was in complainant's proofs that the announcements made from the truck misrepresented the causes which brought about the strike. Search through defendant's proofs discloses no denial. On the contrary, defendants' brief on the appeal concedes that:
"In the heat of controversy, and from the biased position of the contestants, undoubtedly some statements have been made which in a judicial atmosphere might be found to be somewhat misleading or exaggerated."
The vice-chancellor, after reviewing the proofs, found and concluded thus:
"In view of the established facts of misrepresentation and misinformation conveyed by, or emanating from, the `sound trucks,' equipped with loud speaking apparatus, which have been used by the defendants through the streets of the city of Bayonne, I feel that the order restraining that conduct should continue."
The finding of fact contained therein is sustained. Further, the word "scab" was, under the circumstances, objectionable. It carries a scurrilous import. Webster's New International Dictionary classes the use of the word in tradeunionism circles as an "opprobrious" use. It has been held to be a name of insult and of opprobrium. State v. Christie, 97 Vt. 461;123 Atl. Rep. 849. This is the more marked in the present instance because the term is applied to an employer and not, as usually in labor strikes, to a fellow worker who does not co-operate. The word has other meanings, as, a dirty, paltry fellow; a scoundrel; but we know of no sense in which the word is used of a person without opprobrious significance. We think that, pending final hearing in the cause, persistent, blaring, raucous name-calling of this sort, up and down the public highways, was added cause for restraint. *Page 78 
It is said on behalf of the appellants that the order as entered violates the right of free speech secured to them by the state and the federal constitutions. This is not necessarily so. The order does not forbid the defendants to announce the existence of the strike except by this very disturbing amplifier of sound in the public highways. Defendants chose to make a use of the instrumentality which they contended, and still contend, was lawful and which the court below decided was not. The record shows no proposal by them to abandon the objectionable features and no application to chancery for a ruling to be based upon such a proposal. The character of every act, including the act of speech, depends upon the circumstances in which it is done.Schenck v. United States, 249 U.S. 47, 52. It may be that the defendants' misuse of the instrumentality justified the comprehensive prohibition of it subject to application for modification upon assurance of proper use.
The restraint does, however, extend substantially beyond the acts of wrongdoing. In this excess it is weakly supported by the proofs, unconvincingly argued by complainant and not, we think, reasonably essential to complainant's present protection. This phase of the case appears to rest in part upon the propriety of the use of the sound truck, with broadcasting amplifier, per se
— a novel question, with constitutional aspects, which we decline to determine upon the facts and argument now before us. Let the restraint against the sound truck be so modified as to forbid the uses which have been declared wrongful but not to forbid the placing of the truck upon the highways or the making of announcements that a strike exists. The record will presently be remitted to the court of chancery and will therefore be within the flexible remedial power of that court, which, if one mode of restraint fails or proves too drastic, may change it. AmericanSteel Foundries v. Tri-City C.T. Council, 257 U.S. 184;66 L.Ed. 189. Particularly is this so pendente lite.
Finally, it is contended by the appellants that the restraints enjoined by the order of December 1st, 1937, were contrary to chapter 207, P.L. 1926, to article 1, section 5 of the New *Page 79 
Jersey constitution and to the fourteenth amendment to the federal constitution. The order, which was sought by an affected merchant as well as by the complainant, contains these restraints:
"(a) From picketing in this dispute any home, residence, building, store, factory, industry or any and all places with the exception of the premises of the complainant at 579 Avenue C, Bayonne, New Jersey, where picketing may be conducted as prescribed in the order of this court made November 22d 1937.
"(b) From picketing in this dispute the premises, stores or establishments conducted by any merchants, storekeepers or industrial concerns."
The immediate and most practical application of the restraint is to prevent the defendants from prosecuting the systematic offensive against merchants outlined in the recital of facts,supra.
Dictionaries necessarily fail to keep abreast of a word use where the matter which the word describes is in process of development. Webster's New International defines the noun "picket," in its application to the present subject, as "a person posted by a labor organization at an approach to the place of work affected by a strike to ascertain the workmen going and coming and to persuade or otherwise influence them to quit working there." The same authority defines the verb "picket," used with respect to the subject-matter, as "to post pickets at a place of employment, to walk or stand in front of such a place as a picket; to take up the station and duties of a picket, military or labor; to do, or go on, picket duty." An added function of the picket, not contained in the quoted language but nevertheless now quite generally recognized, is to seek to influence, frequently by placards or banners carried by the picket, the public against patronizing the employer. Whether or not the book definitions are short of the current acceptance of the term, they serve to distinguish picketing from other forms of strike activities by naming, as attributes, a "posting" at a "station" for the purpose of accomplishing a result contrary to the wishes or the plans of those who *Page 80 
control the premises or who have business or other interests there.
Appellants argue that the restrained acts do not constitute picketing in its true sense. That may be so. It clearly is so if the foregoing dictionary definition is fully comprehensive; but, quite as clearly, the acts are those which, if enacted against the employer at the place of work, would constitute picketing. But whether so or not makes little difference. The name is unimportant so long as it is quite clear what the restraint is directed towards; and no one appears to be in any doubt about that. (See American Steel Foundries v. Tri-City C.T. Council,supra.) The acts prohibited by the order of December 1st embrace the essentials of a fixed station, beat or patrol and the posting of a person or persons thereat in an effort to compel, by this means, a yielding to the defendants' demands. The term "picket" is applied thereto, with reason and, we think, by acceptance. It was used below and is used here in that sense, and this whether the picketing be at the premises of the employer or at the premises of another in the effort to reach the employer indirectly.
Chapter 207, P.L. 1926, is cited as prohibitory of the restraint now under discussion. The statute provides that in cases involving and growing out of a dispute concerning the terms or conditions of employment "no restraining order or writ of injunction shall be granted * * * any person or persons, either singly or in concert, * * * from peaceably and without threats or intimidation being upon any public street * * * for the purpose of obtaining or communicating information, or to peaceably and without threats or intimidation persuade any person or persons to work or abstain from working, or to employ or to cease to employ any party to a labor dispute, or to peaceably and without threats or intimidation recommend, advise or persuade others so to do, provided said persons remain separated one from the other at intervals of ten paces or more." Neither in title nor in body does the statute expressly mention the word "picketing," and we think that it may not be said to refer *Page 81 
impliedly to a form of picketing which at the passage of the statute, and until recently, was not practiced or attempted. The right to be upon the public highways does not, as of course, include the right indiscriminately to focus upon a particular house or place of business and, by maintaining a continuous and conspicuous patrol, put the place or those whose interests are there in a state resembling one of siege. The opposite view would lead logically to strange results. If the place of one who advertises in a newspaper against which there is a strike is subject to be picketed, why not that of the newsdealer who sells it, of him who buys it, or even of him who reads it? Why may not a home be picketed with the announcement "this party reads a scab newspaper" or "the householder herein buys the Bayonne Times
which is unfair to its reporters?" The loss of readers is as fatal to a newspaper as the loss of advertisers; indeed the former loss results directly in the latter. The prohibited act marks the end of the attempt to persuade the merchant and the institution of social and economic force against him. If he is to be subjected to this pressure why not to the added pressure of a picketing against his customers because they do business with him — and so on along the line? There must, in all reason, be a limit somewhere. There is no legitimate dispute in the statutory sense between the defendants and those whose property they are enjoined from picketing. (See Feller v. Local 144, International, c.,Union, 121 N.J. Eq. 452.) The United States supreme court held in Duplex Printing Press Co. v. Deering, 254 U.S. 443;65 L.Ed. 349, that the Clayton act of October 15th, 1914, which contained provisions comparable to our 1926 statute, did not prohibit injunctions against a secondary boycott. In New NegroAlliance v. Sanitary Grocery Co., 82 L.Ed. 683, recently decided by that court, it was held that the picketing therein litigated was lawful; but the provocation of the picketing was the refusal of the respondent to employ negro clerks, a labor status which directly concerned the respondent; further, the decision turned upon section 13 of the Norris-LaGuardia act of March 23d 1932, a statute which was held *Page 82 
to extend the prohibitions of the Clayton act respecting the exercise of jurisdiction by federal courts and which, by its provisions, gives wider application to the term "labor dispute" than does our state statute. We consider that the facts of the dispute and the controlling federal statute are quite different from the facts and the law in the instant case. In our opinion the New Jersey statute does not prohibit restraints of the sort under review.
On the constitutional question it is to be remembered that the right of indirect picketing, claimed by the defendants, does not, according to our finding, involve or arise out of a labor dispute. Only by taking facts out of their true perspective may it be argued that, for instance, a prohibition against picketing the store-front of a merchant who is not a party to the labor dispute is a denial of the right of free speech accorded by the state constitution or deprivation of personal rights without due process of law contrary to the fourteenth amendment to the federal constitution. Of the cases cited by appellants on the freedom of speech and of the press the only one which, as we think, calls for mention is Senn v. Tile Layers ProtectiveUnion, 301 U.S. 468; 81 L.Ed. 1229; and that case is, we believe, readily distinguishable. It involved the construction of a Wisconsin statute substantially different from our 1926 statute, supra. It was found by the trial court that the controversy was a "labor dispute" within the meaning of the Wisconsin statute; a finding that was conclusive on the appeal. The picketing in that case was against the complainant Senn, a building contractor, and by the finding of the trial court the picketing issue was confined to the picketing of the complainant's jobs. The question on the appeal was whether the state statute, and the refusal by the state courts to give injunctive relief to Senn against picketing imposed by the union upon his works, violated the fourteenth amendment. The supreme court held that there was no violation.
We conclude that the 1926 statute is inapplicable, and, further, that the restraint is not violative either of article 1, section 5 of the state constitution or of the fourteenth amendment to the federal constitution. *Page 83 
There are several aspects to the problem; as, that of the striking workers who are entitled to present their case and make their appeal; that of the employer who not only has his side of the controversy to present but has property rights to protect; that of the worker who has the right and the desire to work and wishes that neither he nor his family shall be subjected to insult or annoyance, and that of a more distantly related class typified in this discussion by advertisers in the complainant's newspaper. The problem is to save to each such a degree of freedom as is commensurate with the protection of the rights of others. We are of the opinion that the lawful place for defendants' picketing operations is at the site of the employment from which the strikers have struck, from which they wish other workers to strike or remain absent, where the working conditions to which the strikers object or which they seek to improve do or will maintain and where the order of December 1st, by its terms, does not apply. The attempt to picket in the prohibited places is an indirect approach to the objective and, under the circumstances of the case, involves and unlawfully prejudices the rights and privileges of those who are not the employer and are not those who seek to force the employer to a new or different course of action. The provisions of the December 1st order are sustained.
The record will be remitted to the court of chancery with directions to modify in accordance with this opinion. As so modified the orders will be affirmed.