The bill is for an injunction to restrain certain activities of the defendants usually incidental to a strike or other labor controversy. They are unique in that the controversy of which they are the usual concomitant is non-existent. Among these activities are threats of picketing the complainant's place of business and actual picketing and boycotting of complainant's customers.
The complainant is a manufacturer and wholesale dealer in furniture, and has been engaged in this business for about *Page 148 
eight years, and at his present location, No. 393 High street, Newark, for about two years. He does a gross business of $150,000 annually, and has about twenty employes, none of whom, at the inception of the activities complained of, were members of any labor union. Complainant says that he has recently been "informed" that two of his employes have lately become affiliated with the defendant union, but none of the employes have expressed any dissatisfaction with their wages, hours of work or other conditions of employment. There is no strike of any of such employes. All have continued in complainant's employ with apparent satisfaction. About one-half of them have written contracts of employment with complainant which do not expire until some time in 1939. Complainant conducts his business on the open shop plan and has never been involved in any labor difficulties with his employes. Recently defendants sought to unionize complainant's business and endeavored to induce complainant to sign a closed shop contract. He expressed a willingness to execute such a contract if a majority of his employes desired it, but not a single employe evidenced such desire. When complainant was importuned to sign the closed shop contract defendants informed him that if he refused to do so, the defendant union would "go after the complainant's trade" and the proofs show that immediately following his refusal the defendant union called upon some of the complainant's customers and requested them to withhold their patronage from complainant because he maintained a non-union shop, and threatened these customers that if they did not immediately sever their business relations with him their places of business would be picketed and boycotted; and circulars were distributed urging the public not to purchase complainant's merchandise of such customers.
Some of these customers acceded to the defendant's demands and canceled orders placed with complainant. Other customers refused to submit and as a result representatives of the defendant union have picketed in the vicinity of such customers' places of business and have distributed among passersby circulars of which the following is a sample: *Page 149 
 "AN APPEAL TO THE PUBLIC
 PLEASE DON'T BUY Upholstered Furniture Manufactured by METROPOLITAN UPH. CO. on Sale at CANTER'S FURNITURE CO. 113 Springfield Ave. Newark Furniture Made by Metropolitan Upholstery Co. is NON-UNION PLEASE BUY FURNITURE BEARING THE UNION LABEL HELP US MAINTAIN THE AMERICAN STANDARD OF LIVING! FURNITURE UNION, LOCAL 66, C.I.O. 1 Broome Street Newark, N.J."
These circulars have also been posted on telephone poles and other convenient spots in the vicinity of customers' business places. None of these recited facts are in dispute, except that defendants claim that none of their activities included any threats, intimidation or attempted coercion. These activities are defended on the ground that they are entirely peaceable, are merely in furtherance of the interests of the members of the defendant union, and for the information of the public. Except for an argument in justification of the distribution of such circulars, and to be hereinafter discussed, the facts of this controversy would not merit discussion, as where no strike or labor controversy exists, picketing of an employer's place of business is unlawful. Stead Co. v. Local No. 7,International Molders' Union of North America, 103 N.J. Eq. 332;Feller v. Local 144, International Ladies Garment WorkersUnion, 121 N.J. Eq. 452; Mode Novelty Co. v. Taylor, 122 N.J. Eq. 593. A fortiori, is secondary picketing of the business places of the customers of such employer unlawful. Evening TimesPrinting and Publishing Co. v. American Newspaper Guild,124 N.J. Eq. 71.
It is contended that defendants' conduct is not picketing in the strict sense of the word because the individuals distributing the circulars do not confine their parading or stations to the space immediately in front of the customers' *Page 150 
places of business, but extend their activities over a territory as far removed therefrom as one block; and that with respect to the complainant's place of business no picketing has ever occurred; but the accuracy of the defining word is of little moment. Evening Times Printing and Publishing Co. v. AmericanNewspaper Guild, supra. Suffice it to say that the activities complained of, under the circumstances of this case, are unlawful, whatever may be their grammatically correct appellation. The threats to picket complainant's place of business are not denied. The defense to this complaint is that there has been no actual picketing, non constat that picketing may not begin at any moment.
Defendants also contend that these activities are but lawful competition; that the union is endeavoring to sell its commodity — labor — and that such activities are for the promotion of the interests of union labor; but there is no element of competition involved, and the picketed shops are not in the market for defendants' commodity, nor involved in any labor controversy. The evident object of the defendant union is to make it so unpleasant for complainant's customers that they will cease to deal with him (Cf. A. Fink Sons v. Butchers' Union, c., 84 N.J. Eq. 638); and it is of the utmost significance that one of the complainant's customers whose place of business has been picketed, and against which a species of boycott is being enforced, is a former complainant in an injunction suit against another C.I.O. affiliate. See Canter Sample Furniture House,Inc., v. Retail Furniture Employes Local No. 109, 122 N.J. Eq. 575.
Defendants also contend that their acts cannot be construed as infringing on complainant's property rights in the service of his employes or the property right of the employe in his employment (Feller v. Local 144, c., supra) because there is no copy of the alleged written contract attached to the bill of complaint, and the proof of the existence of such contracts is insufficient; but the proofs are ample. The complainant himself asserts under oath the existence of such contracts and the affidavits of several of complainant's employes to the effect that they have executed such written *Page 151 
contracts are attached to the bill of complaint. Attachment of copies of the contracts themselves is unnecessary.
Defendants invoke article 1, section 5 of the New Jersey constitution, and argue that any restraint of the defendant's acts, particularly the distribution of circulars, would be a denial of the right of free speech and of other rights guaranteed by that basic law, and of their rights under the fourteenth amendment to the constitution of the United States. The argument is interesting, but specious. As to the first contention, it is based upon an apparent misconception of the purport of the language of said section of our state constitution.
There are two classes of constitutional rights: (1) absolute rights; and (2) qualified rights, which latter are more in the nature of privileges.
Absolute rights are the inherent rights of the citizen, sometimes referred to as natural or human rights. These rights preceded government, are inherent in the very nature of man himself, were not given, but declared, by the constitution, and are inalienable.
Among the "natural and inalienable rights" mentioned in the constitution are those of enjoying and defending life and liberty, acquiring, possessing and protecting property, and of pursuing and obtaining safety and happiness. They are those that, in the words of John Adams, "cannot be repealed, and cannot be voluntarily surrendered, because they are held in trust for posterity." They are the basic or fundamental rights of man and form the cornerstone of all our American institutions. None of them were abandoned when our constitution was adopted, they were, in fact, expressly reaffirmed. Article 1, section 1, constitution of New Jersey. They are essentially property rights which it is the duty of government to protect. If government fails to perform its duty in this regard it is the privilege of the citizen to protect his own.
Qualified rights, or privileges, are those created and granted by the constitution. They did not precede government and they are not inalienable, but are subject to forfeiture. *Page 152 
Among these qualified constitutional rights, which are more in the nature of privileges than rights in the strict sense of the word, is the so-called right of free speech, a privilege often confused with absolute right. The word "privilege" standing alone imparts an idea of permission; a permissive use. 50 C.J. 400.
The right of free speech is a special privilege of citizenship granted by the constitution, and essential to the preservation of the fundamental and inalienable rights; but this privilege is limited and qualified by the very language of the constitution itself: "Every person may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right." Article 1, section 5, Constitution of New Jersey.
It has been said that "it is the height of absurdity to insist on recognition of a privilege named in one section of the bill of rights so that an inalienable right solemnly guaranteed by another of its provisions may be disregarded."
Constitutional safeguards designed for the protection of our inalienable rights should not be permitted to be used so as to destroy those rights.
The complainant and his customers are in the lawful exercise of their inherent or absolute rights; the defendants cannot be permitted to exercise their qualified rights, or privileges, in such manner as will be destructive of the absolute rights of complainant and his customers.
The fourteenth amendment to the federal constitution is not involved.
The acts complained of constitute a private nuisance and should be enjoined.
The defendants will be enjoined accordingly. *Page 153