In this action the plaintiffs seek to enjoin the excessive use of pickets and the commission of unlawful acts by the defendants in the prosecution of a strike now in progress against the plaintiff, Continental Paper Company. The matter is presently before me upon an application for an interlocutory injunction.
The plaintiff, Continental Paper Company, is involved in a labor dispute with its hourly employees who are members of Local 299, United Paper Workers of America, C.I.O. The plaintiff, Alford Cartons, a wholly owned subsidiary of Continental Paper Company, is not engaged in any dispute *Page 537 
with its employees, who are members of Local 344, International Brotherhood of Pulp, Sulphite and Paper Mill Workers, A.F. of L.
Both plaintiffs had labor agreements with their employees. The Alford contract is still in effect, its expiration date being November 20, 1949. The agreement between Continental and the defendant, Local 299, expired while negotiations looking toward a renewal of the contract were in progress. The strike was called suddenly on July 5, 1949.
The plants of both plaintiffs are located on a large tract of land in the Borough of Ridgefield Park, lying between the right of way of the Susquehanna Railroad and the Hackensack River. The only means of access to both plants is a street known as Industrial Avenue. In proceeding along Industrial Avenue, one first reaches the Alford Plant. Immediately following the strike call on July 5th, large numbers of pickets were massed on and about Industrial Avenue effectively closing off access to the plants of both plaintiffs. At first the Alford employees were admitted through the picket lines. But as the strike continued and tension mounted, Alford as well as Continental employees and officers were denied access to their respective plants. To gain entrance to the factories it was necessary for the supervisory employees and officials to group their cars and proceed together under police escort. The testimony is clear and convincing that by their mass picketing the defendants have prevented the non-striking employees and officers of the plaintiffs from having free access to the plants. Truckmen have been refused permission to deliver merchandise and salesmen have been denied entrance. Non-striking employees have been subjected to foul and obscene language; and threats against their persons and property have constantly been uttered. The defendants have made no effort to refute this testimony. They offered no testimony at the hearing.
On August 8, 1949, plaintiffs filed their amended complaint, seeking injunctive relief and damages. The parties appeared before the Superior Court in Hackensack on August 10, 1949, and, in open court, entered into a stipulation as follows: *Page 538 
"1. Defendants, their agents, servants, members and representatives will refrain from picketing or congregating or entering upon the lands or other property of the plaintiffs, or either of them, in any manner whatsoever.
"2. Defendants, their agents, servants, members and representatives agree to permit without any molestation, intimidation, threats, or other means, all supervisory personnel of both plaintiffs, to freely enter upon and leave the property of either or both plaintiffs, and to permit such supervisory personnel to freely enter and leave the plants of said plaintiffs, and furthermore agree to request such supervisory personnel to enter upon said property and enter and leave said plants freely and without molestation of any kind whatsoever.
"3. Defendants, their agents, servants, members and representatives agree that they will not picket in such manner or fashion so as to physically prevent, obstruct, or impede any person or persons from either entering or leaving the property and plants of either or both plaintiffs, whether by a human physical barrier or by any other barrier or means.
"The foregoing stipulation is entered into on the record in this action in open court, without prejudice on the part of the plaintiffs or either of them, in the event of a violation of any of the provisions herein by the defendants, their agents, servants, members and representatives, or any of them, to bring on for hearing on one day's notice to counsel for said defendants the motion for injunctive relief and said motion is hereby continued without day."
Had the terms of the stipulation been followed the matter would not, in all probability, have been pursued. However, such was not the case. After a respite of one day, the massed picketing was renewed. The threats and obscene language directed against officials and non-striking employees of the plaintiffs continued. In at least one case, a supervisor was subjected to violence. Entrance to the plants could only be effected under police escort. And, finally, on the advice of the sheriff, who feared bloodshed, the convoys were discontinued.
It has been demonstrated that far more pickets are employed than are necessary for the lawful conduct of the strike. In fact the number of pickets is, to a large degree, responsible for the disorder which has ensued.
Defendants have argued that evidence of events which preceded the stipulation of August 10, 1949, could not be received because it was "stale." And they say further that testimony concerning acts occurring since the stipulation was *Page 539 
entered into could not be received without the support of an amended complaint. The argument is without merit. The statuteR.S. 2:29-77.3, as one of the conditions precedent to the issuance of an injunction, requires the court to find that unlawful acts have been committed and are likely to be continued unless restrained. In order for the court to be in a position to make such a finding it must know what transpired before and after the filing of the complaint. And on that point, I can conceive of nothing more relevant than proof that the parties entered into a stipulation of settlement in open court which was almost immediately followed by a renewal of the unlawful acts.
The plaintiff, Alford Cartons, Inc., is not engaged in a labor dispute and is, therefore, not subject to the provisions of the so-called anti-injunction statute, R.S. 2:29-77.1, etc.
Defendants contend that the plaintiff, Continental Paper Company, has failed to comply with the provisions of R.S.
2:29-77.4. There is no substance to this contention. There is nothing in the record from which a conclusion may be drawn that plaintiff, Continental, has failed to comply with any obligations imposed by law. And, in the light of the uncontradicted testimony, the conclusion is inescapable, that every reasonable effort to settle the strike has been made. As early as May, negotiations looking toward a new contract began. These talks continued until July 5th, when the strike started. Thereafter, there were talks by Continental with state and federal conciliation officers; with international officers of the union and, from time to time, with the officers of the local and members of the committee. Certainly where the record shows clearly that negotiations, begun prior to the strike, were continued even after resort was had to this court and while the defendants were engaging in the unlawful acts detailed above, it cannot be contended seriously that all reasonable efforts to settle the strike have not been made by the plaintiff, Continental Paper Company.
The defendants' sole exhibit was a copy of a letter sent by W.J. Alford, Jr., the president of the Continental Paper Co., to its employees and received by them on the day the *Page 540 
hearings opened. This letter, after deploring the existing conditions, concludes as follows:
"The Company's proposal to settle this strike remains unchanged and will stay unchanged. Following a return to work, we will sit down in peaceful surroundings like gentlemen and discuss the differences between the Company and the Union."
Defendants contend that by the sending of this letter, the Continental Paper Company forfeited its right to injunctive relief. They say that the letter was a refusal to negotiate the labor dispute. I do not agree with this contention. The statute,R.S. 2:29-77.4, requires that all reasonable attempts be made to settle the dispute. Efforts to resolve the difficulties of the parties should be made before the aid of the court is invoked.Phelps Dodge Copper Products Corp. v. United Electrical, Radioand Machine Workers of America, 138 N.J. Eq. 3; affirmed,Westinghouse Elec. Corp. v. United Elec., Radio and Mach.Workers, 139 N.J. Eq. 97; Isolantite, Inc., v. UnitedElectrical Radio and Machine Workers, 130 N.J. Eq. 506; affirmed, 132 N.J. Eq. 613. But disregarding the time when the letter was sent, I think it cannot be seriously argued that a refusal to continue negotiations under the pressure of illegal acts could be construed as a failure to observe the statutory requirements.
I find that the unlawful acts detailed above have been committed and are likely to be continued unless restrained. And it is obvious that substantial and irreparable injury to plaintiffs' property will follow unless an injunction against the continuation of such acts is granted.
As to each item of relief sought, it is clear that greater injury will be inflicted upon the plaintiffs by the denial thereof than the defendants will suffer by the granting of such relief. Isolantite, Inc., v. United Electrical, etc., ofAmerica, supra. And it is plain that the plaintiffs have no adequate remedy at law.
There will be judgment for an interlocutory injunction restraining the defendants, their agents and servants from committing any of the unlawful acts above set forth. The form of the judgment may be settled on notice. *Page 541