SUN DIAL CORPORATION, A CORPORATION OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. CARL D. RIDE-OUT, JAMES L. RIDEOUT, ROBERT A. WHITFIELD, NANCY ORI WHITFIELD AND PRECISION MARKING CO., A CORPORATION OF NEW JERSEY, DEFENDANTS-APPELLANTS.

Argued January 31, 1955—Decided February 28, 1955.

*Mr. Walter D. Van Riper* argued the cause for the appellants (*Messrs. Van Riper & Belmont,* attorneys).

*Mr. F. O. Miniutti* argued the cause for the respondent (*Messrs. Davidson & Miniutli,* attorneys).

The opinion of the court was delivered by

JACOBS, J.   The plaintiff prevailed in its action to enjoin the individual defendants, its former employees (along with their corporation, the defendant Precision Marking Co.) from using or disclosing the plaintiff's secret process which they learned while in its employ.   See *Sun Dial Corp. v. Rideout,* 29 *N. J. Super.* 361 (*App. Div.* 1954), affirmed 16 *N. J.* 252 (1954).   In due course an injunctive order was entered in the Chancery Division and thereafter the defend-

ants appealed to the Appellate Division on the ground that it was too general and sweeping in scope and failed to comply with *R. R.* 4:67–5. This ground was rejected in *Sun Dial Corp. v. Rideout*, 31 *N. J. Super.* 375, 377 (*App. Div.* 1954) and we granted certification under *R. R.* 1:10–2.

*R. R.* 4:67–5 provides that every order granting an injunction shall set forth the reasons for its issuance, shall be specific in terms and "shall describe in reasonable detail" the acts sought to be restrained. Although its terminology was taken from *Rule* 65(*d*) of the *Federal Rules of Civil Procedure*, it effected no change in our long standing practices and decisions in this field. See *Richards v. West*, 3 *N. J. Eq.* 456, 459 (*Ch.* 1836); *State Board of Milk Control v. Newark Milk Co.*, 118 *N. J. Eq.* 504, 524 (*E. & A.* 1935); *Evening Times Printing & Publishing Co. v. American, etc., Guild*, 124 *N. J. Eq.* 71, 76 (*E. & A.* 1938). *Cf. Isolantite, Inc., v. United Electrical, etc., of America*, 130 *N. J. Eq.* 506, 513 (*Ch.* 1941), modified 132 *N. J. Eq.* 613 (*E. & A.* 1942); *Taylor Iron and Steel Co. v. Nichols et al.*, 73 *N. J. Eq.* 684, 690 (*E. & A.* 1908); *Pomeroy Ink Co. v. Pomeroy*, 77 *N. J. Eq.* 293, 299 (*Ch.* 1910). In the *Richards* case, Chancellor Vroom voiced the now universal view that an injunction should be plain and certain on its face and must be strictly obeyed in accordance with its terms, with leave, however, to the defendant to apply for its modification if he considers it too broad. In the *Milk Control* case Justice Heher noted that the restraint should be "so clear, definite, and certain in its terms that the person to whom it is directed may readily know what he is restrained from doing." In the *Isolantite* case Vice-Chancellor Bigelow suggested that "the injunction must be as specific as the nature of the case permits." And in the *Taylor* and *Pomeroy* cases the courts dealt specifically with the practicalities presented when the infringement of a secret process is being enjoined. In the *Taylor* case Justice Swayze pointed out that in order to preserve the secrecy of the process the usual course is to take evidence in camera and thereafter seal it for use "only when

it becomes necessary to determine whether there has been a violation"; he stated that it is "not necessary to embody the description of the secret in the injunction itself." In the *Pomeroy* case Vice-Chancellor Emery, in restraining the improper use and disclosure of trade secrets, had this to say as to the form of the injunction:

"At the hearing the question was also raised by the defendant as to the form of injunction, in case it should be held that complainant was entitled to an injunction. The preliminary injunction restrained the defendant from selling or disposing of any of the formulas or formula notes sold by the receiver and from revealing the contents of the formulas and formula notes to any other person or corporation, either by disposing of them or in any other manner. It was objected that this was too general, and that the injunction should describe or define specially each formula whose sale was enjoined. The general form is, however, the one sanctioned by high authority and was adopted in *Morison v. Moat, supra* [*9 Hare* 241], the first leading case on this subject, and has been followed in other cases.

To insert the formula in the injunction would destroy its secrecy."

In the instant matter the injunction restrains the defendants from using or disclosing directly or indirectly the plaintiff's secret process "for the manufacture and marking of edge lighted and unlighted instrument panels, dials and the like, by the surface application of paints and other chemical finishes, and the subsequent chemical removal of such paints and other chemical finishes in the areas desired so as to form a pattern or mark." In the light of the full hearings before the Chancery Division the defendants can have no doubt whatever as to the meaning of the foregoing and no further elaboration was required. See *Taylor Iron & Steel Co. v. Nichols, supra; Pomeroy Ink Co. v. Pomeroy, supra*. We reject their contention that each of the ingredients described in the Appellate Division's opinion should have been listed in the injunction and its use restrained, with permission, however, for the defendants' use of a substitute ingredient in its stead; indeed, this approach would disregard the very foundation upon which the injunction was rested and would outline the course for its evasion. The

relief was not grounded on the finding that the individual components of the process were generally unknown; on the contrary, the explicit determination was that "although its individual components may in themselves have been well known, the plaintiff's process in its aggregate was, in fact, a trade secret" which the defendants had wrongfully appropriated to themselves. See 16 *N. J.*, at *page* 258. Under this determination the plaintiff was clearly entitled to the comprehensive restraint against the defendants' use or disclosure of its secret process as set forth in the order of injunction.

The order of injunction does, however, contain other language to which the defendants object and which we believe should be excluded. Thus, paragraph 1 not only restrains infringement of the plaintiff's secret process but also restrains infringement of "processes substantially or basically similar thereto." The quoted language is vague and places the defendants in additional jeopardy; its presence is not required to afford the plaintiff its just measure of protection and at oral argument counsel indicated that it may properly be exscinded. Similar language is found in paragraph 3 which restrains the defendants from using directly or indirectly the machine developed by the plaintiff for graduating or the making of masters "or any machine substantially or basically similar to said machine," or disclosing to others any information concerning the said machine "or machines basically similar thereto." We are satisfied that the injunction against the use or disclosure of the machine itself was in conformity with the Appellate Division's opinion which was sustained by this court on appeal. See 29 *N. J. Super.*, at *page* 366. However, the quoted language is vague, places the defendants in additional jeopardy, and is not required to afford the plaintiff its just measure of protection; at oral argument counsel indicated that it may properly be exscinded. Paragraph 4 of the order of injunction impounds the machine used by the defendants for the graduating or the making of masters, but at oral argument it was suggested that the parties will be able to agree on the terms of its transfer to the

plaintiff. If they are unable to do so the defendants will have leave to dismantle it and use or dispose of its parts for purposes other than those encompassed by the plaintiff's process.

The defendants' final contention is that the injunction should contain an affirmative provision authorizing them to manufacture dials and panels by use of "the Bendix specifications" or the "process used by the Linotone Division of Mergenthaler Linotype Company." We do not agree. The order of injunction equitably furnishes pragmatical protection for the plaintiff's process alone; the defendants remain at liberty to use other distinct processes (which we are not now called to pass upon) so long as they in nowise infringe upon the plaintiff's process. The defendants will act at their peril, but that flows fairly from their own misdoing.

The order of injunction is modified in accordance with this opinion and, as thus modified, is affirmed.

*For modification*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*Opposed*—None.